UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LARRY G. NELSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 09 C 883 |
| v. | ) | |
| | ) | Judge Rebecca R. Pallmeyer |
| RONALD LIS, ELIZABETH WILSON, | ) | |
| RICHARD NOVOTNY, BRADLEY RUZAK, | ) | Magistrate Judge Arlander Keys |
| and CITY OF CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

<u>**PLAINTIFF'S MOTION FOR A NEW TRIAL UNDER F.R.Civ.P 59(a) BECAUSE PREJUDICIAL ERRORS OCCURRED AT TRIAL AND BECAUSE THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE (SUPPLEMENTED BY LEAVE OF COURT)**</u>

Plaintiff, Larry G. Nelson, by and through his attorneys, Irene K. Dymkar and James L. Bowers, hereby supplements his motion for a new trial under Federal Rules of Civil Procedure (F.R.Civ.P.) 59(a) by leave of the Court. Under F.R.Civ.P. 59(a), a new trial is warranted if a prejudicial error occurred or if the verdict is against the weight of the evidence. *Bankcard Am., Inc. v. Universal Bancard System*, 203 F.3d 477, 480-81 (7ᵗʰ Cir.2000). Plaintiff bases this motion on both grounds.

Pursuant to previous representations to the Court, plaintiff is also moving in separate filings to set aside the judgment and for sanctions pursuant to F.R.Civ.P. 60(b)(3) and 60(d)(3).

<u>**BACKGROUND**</u>

Plaintiff's motion for a new trial was timely filed on October 4, 2010. By leave of the Court, extensions have been granted for plaintiff to supplement his motion with citations to the full trial transcript, which was not available when the motion for a new trial was due. The trial transcript became available in its entirety, and then was subsequently

filed, subject to redaction, on December 6, 2010.[1]  The full trial transcript contains different pagination from excerpts which were previously available and cited in plaintiff's motion filed October 4, 2010.  Therefore, citations and page references have been added to plaintiff's motion for a new trial, where appropriate, or changed from the excerpt pagination to the full transcript pagination, where appropriate.  All arguments remain for the most part unchanged, although arguments have been combined and certain statements have been amplified where review of the trial transcript indicated that plaintiff's counsel's memory of the argument or testimony had not been accurate or complete.  Case citations have also been added.

### PLAINTIFF IS ENTITLED TO A NEW TRIAL BECAUSE OF ERRORS AT TRIAL

#### A.  The Court Misapplied the Burden of Proof When Instructing the Jury and Ruling on Defendants' Objections During Plaintiff's Summation

The term "burden of proof" actually encompasses two burdens.  One is the burden of producing evidence, sometimes referred to as the "burden of evidence" or the "burden of going forward."  The other burden is the "burden of persuasion," sometimes referred to as "the risk of nonpersuasion of the jury."  The burden of persuasion becomes crucial only if the parties have sustained their respective burdens of producing evidence.  It becomes significant if the trier of fact is in doubt; if the trier of fact is in doubt, then the matter must be resolved against the party with the burden of persuasion.

---

[1]On September 9, 2010, plaintiff had ordered trial transcript excerpts relevant for this motion, some for 7-day delivery and some for 14-day delivery.  While the two court reporters who recorded the trial, Frances Ward and Colleen Conway, were able to complete some of the work, their obligations to other judges and other cases kept them from completing all the work by the deadlines.  In the meantime, defendants ordered the entire trial transcript, which complicated matters.

According to Ms. Conway, producing plaintiff's requested excerpts in mini-volumes had become onerous and confusing (e.g., there were going to be two Volume 1-A's).  Also, the pagination was convoluted, in that each requested excerpt began with "page 1."  Because defendants had ordered the entire trial transcript, Ms. Conway stated that she was not going to complete the unfinished excerpts, but would instead complete the entire trial transcript as defendants had ordered, so that pagination would proceed from page 1 to the end.  As plaintiff set forth in his motion to extend filed November 30, 2010, Ms. Conway's anticipated deadline for the completion of the full trial transcript changed from October 15, 2010, to October 29, 2010, to November 5, 2010.  The first volume of the full trial transcript was e-mailed on November 10, 2010, and the final volume was e-mailed on November 16, 2010.  All volumes of the full trial transcript were filed on December 6, 2010.

The burden of persuasion never shifts. The burden of going forward, however, does shift.

> Suppose, however, that the proponent has been able to go further and to adduce evidence which if believed would make it beyond reason to repudiate the proponent's claim - evidence such that the jury, acting as reasonable men, must be persuaded and must render a verdict on that issue for the proponent. Here the proponent has now put himself in the same position that was occupied by the opponent at the opening of the trial, i.e., unless the opponent now offers evidence against the claim and thus changes the situation, the jury should not be allowed to render a verdict against reason - a verdict which would later have to be set aside as against the evidence.

*9 Wigmore, Evidence* § 2487 (Chadbourn rev. 1981); see also § 2489.

The allocation of the burden of persuasion in a § 1983 case claiming a Fourth Amendment violation is clear. A plaintiff claiming he was arrested without probable cause carries the burden of persuading the jury that there was an absence of probable cause. *McBride v. Grice,* 576 F.3d 703, 706 (7th Cir.2009), citing *Woods v. City of Chicago,* 234 F.3d 979, 996 (7th Cir.2000). A plaintiff thus carries the "ultimate" burden of proving that a search or arrest was unreasonable because probable cause was lacking. *See Valance v. Wisel,* 110 F.3d 1269, 1279 (7th Cir.1997).

Nevertheless, defendants have the burden of going forward when it is their turn to present evidence. As the Ninth Circuit explained:

> Although the plaintiff bears the burden of proof on the issue of unlawful arrest, she can make a prima facie case simply by showing that the arrest was conducted without a valid warrant. At that point, the burden shifts to the defendant to provide some evidence that the arresting officers had probable cause for a warrantless arrest. The plaintiff still has the ultimate burden of proof, but the burden of production falls on the defendant.

*Dubner v. City and County of San Francisco,* 266 F.3d 959, 965 (9th Cir.2001), *see Watson v. City of Huntington Beach,* 2007 WL 4142976, *1 (9th Cir.2007).

At the trial of this case, defense counsel interrupted plaintiff counsel's summation several times. At those points, plaintiff's counsel was attempting to argue to the jury that defendants never presenting any proof at trial of probable cause to seize and detain plaintiff, Larry Nelson. Defense counsel objected that this was "burden-shifting." The Court instructed the jury, plaintiff submits incorrectly, that defendants have "no obligation to present evidence." The transcript reads as follows, with the Court's rulings in question in bold:

3

MS. DYMKAR: Okay. I'm going to talk a little bit about the burden of proof here. The Judge read to you that it's preponderance of the evidence. So if one party -- if you can imagine two scales, and the plaintiff is in one and the defendants in the other, if one party -- this is the plaintiff. Even a feather weight on one side means that that person wins. If the plaintiff by a feather weight has more evidence, then you have to find for the plaintiff. That's preponderance of the evidence.

And Mr. Kamionski misspoke. He said, "They have to prove their case." But they have to prove their case, too.

MR. KAMIONSKI: Objection, burden-shifting.

**THE COURT: The plaintiff has the burden of proof in the case.**

MS. DYMKAR: We have --

THE COURT: Let's move on.
MS. DYMKAR: We have the burden of proof. They have to put evidence in, just as a --

MR. KAMIONSKI: Objection, burden-shifting.

MS. DYMKAR: Just as a criminal case.[2]

**THE COURT: Ladies and gentlemen, the defendants have no obligation to present any evidence. The plaintiff has the burden of proof.**

MS. DYMKAR: Larry Nelson is evidence. His testimony is evidence. You don't have to come in with physical things. And if his car was gone through and it wasn't -- he didn't say it was damaged. He just said that they pulled things apart.

You don't have to come in with physical things. His testimony is evidence. Where is their testimony? Where are their witnesses? They have four defendants, and nobody --
MR. KAMIONSKI: Objection, burden-shifting.

MS. DYMKAR: -- knows anything. Pardon me?

**THE COURT: The defendants have no obligation to present evidence, ladies and gentlemen. You are welcome to proceed, Ms. Dymkar.**

MS. DYMKAR: Witnesses were equally available to them. Commander Jackson, if they wanted to rebut what Larry Nelson said --

MR. KAMIONSKI: Objection, burden-shifting.

THE COURT: The statement that witnesses were equally available to the defendants is not objectionable.

---

[2]     Plaintiff's counsel believes she said, "This is not a criminal case." However, because two people were speaking at the same time, the court reporter did not record the statement correctly.

You are welcome to proceed.

MS. DYMKAR: Thank you.

Deputy Superintendent Jackson is equally available, maybe even more available to them. He works for the city. They didn't call him. They didn't bring in any witnesses.

MR. KAMIONSKI: Objection, burden-shifting.

**THE COURT: I have reminded the jury that the defendants have no obligation to present any evidence.**

Let's -- I think we should move on from this.

MS. DYMKAR: Thank you.

If they wanted to rebut evidence, they had the opportunity to bring in witnesses. If they wanted to rebut evidence and they wanted to call people on that sheet of 51 pages --

MR. KAMIONSKI: Objection, burden-shifting once again, Your Honor.

MS. DYMKAR: Your Honor, availability, because they can call witnesses, too.

**THE COURT: It's fine to comment that the defendants -- again, it's fine to comment on the defendants' ability to call witnesses, but we can go on.**

MS. DYMKAR: If there's a feather weight of proof on Larry Nelson's side, you have to find for him.

*Trial Transcript (hereinafter Trial) p 661:6 - 663:19.*

The Court's rulings and instructions to the jury left the jury with the impression that defendants have no burden to present evidence at all at a trial. That may be true in a criminal case, but not in a civil case. Plaintiff should have been allowed to argue to the jury that the paucity of evidence presented by defendants, in addition to their admission that they could remember no facts that would support probable cause, meant that it was more probable than not that plaintiff's version was true and the jury should find for plaintiff.

From the jurors' questionnaires and the questioning of the jurors, it appears that two jurors had prior criminal jury trial experience, Ellen L. McCracken and Joseph M. Woods, who seemed to be two of the more extroverted jurors. Jurors' questionnaires were attached as Exhibit C to plaintiff's original motion, filed as Document 124. It is very possible that

5

the Court's rulings and instructions regarding defendants not having to present proof may have lead jurors such as Ms. McCracken and Mr. Woods to believe that the rules of a criminal trial applied.

There is an indication that the jury may have not only adopted the assignment of the burden of proof in a criminal case, but may also have adopted the standard of proof in a criminal case. Early in the jury's deliberation, the jurors asked the following question: "If we have doubts, does our vote go to the defendants?" *Document 121 (jury's first note); Trial p. 673:13 - 15.* It was clear from the note that the jury was confused about the distinction between "beyond a reasonable doubt" and "preponderance of the evidence," since the jury had used the word "doubt." The Court recognized that the jury appeared to be adopting the criminal standard. *Trial p. 674:19 - 675:24; 676:3 - 7.*

Not allowing plaintiff's counsel to argue to the jury that defendants presented no proof whatsoever to prove probable cause, in addition to admitting that they had no facts to support probable cause, impeded plaintiff's counsel from forcefully arguing that it was more probable than not that plaintiff's version was true and the jury should find for plaintiff. Instructing the jury while ruling on defense counsel's several objections during plaintiff's summation that defendants did not have to present any proof whatsoever is likely to have confused the jury into thinking that the criminal burden of proof, as well as well as the criminal standard of proof (as indicated by the jury note), applied. Therefore, a new trial is requested.

### B. The Court Could Not Cure the Erroneous Instruction That Plaintiff Had to Be "Harmed" by the False Arrest

As part of the proposed pre-trial order, plaintiff had proposed a jury instruction for a Fourth Amendment unreasonable seizure and detention which tracked Seventh Circuit Pattern Jury Instruction 7.05 on the list of elements. *Document 92-7, p 34.* Plaintiff changed the word "arrest" to "seized and detained" and, pursuant to the Seventh Circuit Committee instruction on undisputed elements, eliminated the element pertaining to color of law. Defendants, on the other hand, proposed two instructions which substantively changed the Seventh Circuit Pattern Jury Instruction. Defendants changed "probable cause" to "reasonable suspicion" and also added to the Seventh Circuit Pattern Instruction that plaintiff had to prove two additional elements:

      3.   That the particular Defendant that you are considering conducted the seizure in an unreasonable manner; and

      4.    Because of the unreasonable seizure, the Plaintiff was harmed.

*Document 92-7, p 33, 35.*

Defense counsel insisted that the harm element be added. Plaintiff's counsel's objected to that this additional element and argued that liability instructions should be separate from damages instructions. The Court agree with defense counsel. *Trial p. 550:11 - 552:18.* The instruction that added to the Seventh Circuit instruction the element that "because of the unreasonable seizure, the Plaintiff was harmed" was given. *Trial p. 599:1 - 2.*

Twice during their deliberations, the jury announced their confusion about this element. *Document 121 (jury notes # 2 and # 4).* In jury note # 2, the jury circled the "harm" element on the typed instruction given them and requested "please clarify." They also asked if "harm" should be added to the jury verdict form. *Trial p. 680:10 - 22.* Plaintiff's counsel repeated her objections to the "harm" element. She argued that she believed the jury was confused about the word "harm," and that the jury must be thinking that there had to be physical harm for plaintiff to prevail. Plaintiff's counsel asked that the Court re-read to the jury the damages instruction that explained that compensable injuries could be emotional as well as physical or, minimally, specifically point the jury to the damages instruction. *Trial p. 680:23 - 681:12; 682:18 - 22; 683:17 - 18; 684:20 - 685:5.* Because of the objections of defense counsel, the Court declined. *Trial p. 685:19 - 21.*

In their fourth note, the jury hand-wrote all three elements presented to them for the illegal seizure instruction, including the "harm" element, with the question: "Does the jury have to find that all of the above occurred to find for plaintiff?" *Trial p. 689:20 - 690:4 - 5.* Plaintiff's counsel repeated her objections to the "harm" element. She argued again that she believed the jury was confused about the word "harm," and that the jury thought that there had to be physical harm for plaintiff to prevail. Plaintiff's counsel also asked again that the Court re-read to the jury the damages instruction that explained that compensable injuries could be emotional as well as physical or, minimally, specifically point the jury to the damages instruction. *Trial p 690:7 - 17; 692: 4 - 693:3; 693:23 - 694:14; 696:5 - 14; 698: 7 - 9.*

The Court acknowledged that the instruction which varied from the pattern instruction might be error. *Trial p. 695:18 - 25; 697: 12 - 13.* The Court deleted the "harm" element from the instruction, but declined again to also re-read the damages

instruction or specifically tell the jury that they could consider emotional injuries as well as physical injuries. *Trial p. 698:10 - 12.*

The Court's variance from the Seventh Circuit instructions created confusion with the jury and was an error. The Court did delete the "harm" element from the instruction, and submit the new instruction to the jury, but the damage was already done. The Court's curative instruction could not erase the hours of consideration and deliberation the jury had already invested in thinking that plaintiff had to be physically harmed. In addition, by not specifically instructing the jury to consider emotional as well as physical injury, there was little hope that the jury's misunderstanding, ingrained over hours of deliberation, as illustrated by their two notes, was abated. A new trial therefore should be ordered.

### C. It Was Prejudicial Error for the Jury to Hear Margarita Galindo's Testimony That Plaintiff's Vehicle Registration Was Suspended

Plaintiff will bring a separate motions seeking relief from the judgment in this case because of misconduct by opposing counsel and seeking sanctions from the Court. However, for purposes of this Rule 59(a) motion, plaintiff submits that, despite the Court's curative instruction, the testimony by Margarita Galindo that plaintiff's vehicle registration was suspended was devastating to plaintiff's case and constitutes error requiring a new trial.

Margarita Galindo was an investigator employed by the Independent Police Review Authority, whose job it was to conduct investigations into police misconduct and allegations of excessive force. *Trial p. 263:24 - 264: 1.* She was asked by defense counsel to interpret an Office of Emergency Management and Communications (OEMC) record that even the OEMC document witness (Jill Maderak) was not able to identify or authenticate. *Trial p. 372:14 - 373:11.* The relevant pages of the exhibit were attached to plaintiff's original motion papers as Exhibit E.

The overwhelming leading question that defense counsel Avi Kanionski blurted out before being objected to by plaintiff's counsel was: "Do you know why the officer received a message that his license was expired? His license plate was expired 9/2007." *Trial p. 315:15 - 16.* Defense counsel was asking for the meaning of an entry in the Portable Data Terminal (PDT) Messages Log generated by the computer in Defendant Wilson and Ruzak's squad car. Uninformed, Ms. Galindo responded, essentially, that the entry "9466535 EXP / 092007" indicated that plaintiff's vehicle registration was expired on in September of 2007, which was not true. *Trial p. 316:3.*

Defense counsel fraudulently put forth this false testimony. Plaintiff argued that this was unfair. *Trial p. 488:20 - 495:17.* Plaintiff moved for a mistrial, based on this wholly unanticipated and surprise false testimony. *Document 115.* This motion was argued at length. *Trial p. 530:22 - 548:1.*

As pointed out in plaintiff's motion for a mistrial, Mr. Kamionski knew well from the deposition testimony that all four defendant officers had looked at this same record and had testified under oath that there was no indication that there was any problem with Mr. Nelson's license or vehicle registration on that record. As pointed out by the Court, Mr. Kamionski never showed this exhibit to any of the defendants when they testified at trial, to connect up the false and speculative testimony of Margarita Galindo with their own observations. *Trial p. 535:11 - 14.* That, of course, would have been suborning perjury. Instead, Mr. Kamionski used Ms. Galindo, who was not qualified to interpret a police computer document, to forge ahead with the testimony he knew to be false.

Mr. Kamionski also was well aware that on the same page of the police computer record from which Ms. Galindo testified, there is an entry "VAL/11072007," which indicated that Mr. Nelson's vehicle registration was valid on November 7, 2007. *See Exhibit E of plaintiff's original motion, on which the two entries are circled.* Yet Mr. Kamionski had the audacity to move for a directed verdict based on this false testimony and he also attempted to argue this false testimony to the jury, until the Court sustained plaintiff's objection. *Trial p. 655:24 - 656:11.*

The Court gave a curative instruction to the jury. However, the damage was done. By his reprehensible conduct, defense counsel planted in the jury's mind that Mr. Nelson's registration was expired and that the police had probable cause to pull his vehicle over.

As mentioned above, plaintiff will seek in another motion to vacate the judgment based directly on the intentional misconduct of defense counsel. However, the prejudice to plaintiff brought about by Ms. Galindo's testimony elicited by Mr. Kamionski is error enough also to warrant a new trial under Rule 59(a).

### D. It Was Error to Allow Defendant Novotny to Speculate as to Why They Might Have Pulled a Gun on Plaintiff, Stopped Him, Handcuffed Him, and Searched His Vehicle

Plaintiff brought a *motion in limine* to bar evidence, testimony, and argument that defendants had probable cause to arrest plaintiff and search his vehicle. *Document 102.* Plaintiff renewed the motion prior to plaintiff's testimony. *Document 110.* In part, the

9

motions were based on defendants' admissions that they had no recollection of any facts supporting probable cause, admissions which resulted from plaintiff's requests to admit during discovery, and which were going to be read (and were read) to the jury.

At trial, Mr. Kanionski questioned defendant officer Novotny at length about his speculative reasons why the officers might pull at gun on someone, might perform a traffic stop, might handcuff someone during a traffic stop, and might search someone's vehicle. Plaintiff's counsel objected strenuously, initially at a sidebar and then throughout the questioning, but the Court allowed the testimony. *Trial 474:6 - 481:10.*

This testimony was extremely prejudicial to plaintiff because the various reasons why a police officer might be in danger in a traffic stop were not at all relevant to plaintiff and plaintiff's situation. *See Federal Rule of Evidence 403.* Numerous times Novotny referred to "my safety in jeopardy" or "my partners' safety in jeopardy." *E.g., Trial p. 476:4 - 8.* He referred to "furtive movements." *Trial p. 479:11.* He referred to "knives." He referred to "not listening to directives." *Trial p. 480:11 - 12.* He referred to computer communications that a person is "armed and dangerous," "known to fight with police,"and "known to try to disarm the police." *Trial p. 477:15 - 21.*

The reasonableness of a seizure turns on what the officers actually knew at the time of the seizure, not what they might have known, should have known, or found out later. *See e.g., Carmichael v. Village of Palatine, Illinois,* 605 F.3d 451 (7th Cir.2010). Defense counsel improperly garnered sympathy for police officers having a dangerous job by presenting irrelevant facts and this prejudiced plaintiff. Defense counsel planted seeds of doubt in the jury's mind as to what really happened the night plaintiff was pulled over by defendant officers by making up scenarios for which there was not even an iota of proof.

This evidence was not relevant *and* it was "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Federal Rule of Evidence 403.* This evidence was also contrary to defendants' conclusive admission that "they have no present recollection of probable cause or reasonable suspicion sufficient for the arrest or stop" of plaintiff, an admission that was read to the jury. *Trial p. 486:5 - 8; F.R.Civ.P. 36.* This was error and a new trial should be granted.

10

### E.  It Was Error to Deny Plaintiff's Motion to Bar Evidence, Testimony, and Argument of Plaintiff's Other Civil Suits

Plaintiff moved *in limine* to bar all reference to plaintiff's other civil lawsuits and any attempt to portray plaintiff as litigious.  *Document 102.*  At the pre-trial conference, defense counsel agreed that he would not ask any questions regarding any civil lawsuits, save the other pending §1983 case (*Nelson v. Salgado,* 09 C5357, Northern District of Illinois).  *Pre-trial conference transcript (hereinafter PTC) p. 63:21 - 64:2.*  Defense counsel argued that there were "similarities" in the two cases and that plaintiff was confusing the facts.  *PTC p. 64:2 - 66:15[3].*  Plaintiff argued to the contrary that there were no significant similarities in the two cases and that plaintiff was in no way confusing the facts.  *PTC p. 67:9 - 22.*  The Court granted the motion to bar evidence of other lawsuits "without prejudice to reconsideration if Mr. Nelson's testimony opens the door."  *Document 107.*

Plaintiff renewed the motion *in limine* at trial. *Document 110.*   Plaintiff argued again that there were virtually no similarities in the present case and the pending case to warrant any reference to the more recent case.  *Trial p. 21:18 - 22:14.*   The Court continued its ruling that if plaintiff opened the door, it would reconsider its ruling to bar the lawsuits. *Id.*

Plaintiff testified and did not open any doors.  However, defense counsel argued after the direct examination, at sidebar, that because plaintiff testified that having a gun pointed at him was traumatizing, that opened the door to cross examination about other civil lawsuits.  *Trial p. 219:7 - 14.*  The argument was a *non sequitur.*  The Court, however, ruled over plaintiff's counsel's objection, that because plaintiff had testified that "this episode generated a great fear in his heart," other civil complaints brought by plaintiff could be brought into question.  *Trial p. 219:13 - 14.*

Defense counsel began his cross examination like gangbusters, with the prejudicial and inflammatory question: "Mr. Nelson, isn't it true that this is not your first lawsuit against Chicago Police?" *Trial p. 221: 9 - 10.*   He proceeded with several questions such as: "And in all these cases, you allege the police did things that were wrong to you?"  *Trial p. 221:17 - 18.*  Defense counsel made reference to past and pending cases.

---

[3]The transcript erroneously names "Ms. Dymkar" as the speaker starting at *Trial p. 64:4.* However, it is clear from the context that the speaker is "Mr. Kamionski."

*Trial p. 221:13 - 15.* On re-cross examination, defense counsel asked plaintiff whether Irene Dymkar was his attorney in his other lawsuits. *Trial p. 257:9 - 14.*

The clear intent on the part of defense counsel was to prejudice plaintiff and portray him as litigious. His prior justification for wanting to inquire about the other lawsuits, e.g., that plaintiff was confusing the facts between his cases and that plaintiff might have been traumatized by the cases in his other lawsuits, was a sham. Defense counsel never asked plaintiff about a confusion of facts or his injuries in the other lawsuits. Because of defense counsel's totally improper questions, plaintiff moved for a mistrial and the Court denied the motion. *Trial p 284:9 - 285:13; 501:10 - 505:10.*

Most United States Courts of Appeals that have considered the issue, including the Seventh Circuit, have found, under Federal Rules of Evidence 404(b), that the introduction of evidence of other lawsuits, unless there is a showing that the prior lawsuits were fraudulently filed, is so prejudicial to a litigant that any relevance is vastly outweighed by the substantial danger of jury bias against the chronic litigant. *See Mathis v. Phillips Chevrolet, Inc.*, 269 F3d 771, 776 (7th Cir. 2001); *Batiste-Davis v. Lincare, Inc.*, 596 F3d 377 (8th Cir. 2008); *McDonough v. City of Quincy*, 452 F3d 8, 20 (1st Cir. 2006); *Outley v. City of New York*, 837 F2d 587, 592 (2nd Cir. 1988).

In *Mathis, supra*, the Seventh Circuit approved of the District Court's requirement that, before any argument or evidence of other lawsuits was introduced, the offering litigant make an offer of proof, outside the presence of the jury, as to the substance of the evidence, the purpose of the evidence and the reasons that the prejudicial nature of the evidence outweighed its marginally probative value. The Seventh Circuit recognized that the District Court should be "understandably reluctant to plunge into a series of mini-trials on the merits of each of the prior suits." *Mathis,* 269 F3d at 776. In the *Mathis* case, the Seventh Circuit approved of exclusion of evidence that the plaintiff had sued at least six other car dealerships for discrimination after they had failed to hire him.

Plaintiff located only one case in which the Seventh Circuit approved of the admission of evidence of prior lawsuits under Federal Rules of Evidence 404 (b); *Gastineau v. Fleet Mortgage Corporation*, 137 F.3d 490 (7th Cir. 1998). However, in that case, the defendant, at trial, introduced strong evidence that the plaintiff had forged fraudulent documents in both cases as revenge against his employers and with an eye toward litigation.

It was error to allow defense counsel to portray Larry Nelson as litigious, when his other lawsuits were all valid. This was so prejudicial to plaintiff that a new trial is warranted.

12

### F.  Defense Counsel Should Not Have Been Allowed to Question Larry Nelson about Prior Arrests

Plaintiff brought a *motion in limine* to bar evidence, testimony, and argument of plaintiff's prior arrests. Plaintiff has prior arrests, but no convictions. *Document 102.* Defense attorney claimed that he only wanted to use prior arrests to rebut damages. *PTC p. 62:21 - 23.* The Court ruled that previous arrests were admissible for impeachment purposes. *Document 107.* Plaintiff renewed the motion prior to plaintiff's testimony at trial. *Document 110.* The Court ruled that only if plaintiff said something, such as, "I had never had any encounter with the police before" would the arrests come in. *Trial p. 21:10 - 17.*

During cross examination of plaintiff, defense counsel asked, "And, sir, isn't it true that you've actually been arrested in numerous cases?" *Trial p. 223:1 - 2.* It was extremely prejudicial for defendants to present evidence that plaintiff had been previously arrested and to ask about "numerous" arrests was doubly prejudicial. The questions about previous arrests were not asked "to rebut damages," but rather to impugn plaintiff's character and credibility. Plaintiff objected to the prejudicial impact of the evidence. *Trial p. 506:14 - 507:8.*

Any arrest that does not result in a conviction, prior and subsequent to the date of the incident, is not admissible under Federal Rules of Evidence 609, which provides only for the admission into evidence of felony *convictions* within the past ten years into evidence and misdemeanor *convictions* if the crimes involve a lack of truthfulness.

Arrests that do not lead to convictions are generally inadmissible under well-settled law. *See Anderson v. Sternes*, 243 F.3d 1049, 1054 (7th Cir. 2001) (law is clear that a party's prior arrest record is inadmissible; even indirect reference to a party's past arrest is improper); *Brandon v. Village of Maywood*, 179 F. Supp 2d 847, 853-55 (N.D. Ill. 2001) (carefully considering and rejecting all arguments for admission of arrest record — such as "bias" or damages — because prejudice outweighs probative value, especially where officers did not know about the past arrest at the time of the incident). Evidence of Larry Nelson's prior arrests is nothing more than prior bad act evidence which is not admissible under the Federal Rules of Evidence. See *Gregory v. Oliver*, No. 00-5984, 2003 WL 1860270, at *1 (N.D. Ill. April 9, 2003) ("Arrests that have not lead to convictions are classic candidates for exclusion under [F.R.E.] 404(b)"); *Blessing v. Kulak*, No. 86-10227, 1988 WL 67637, at *1 (N.D. Ill.1988) ("The use of the evidence of prior arrests, despite defendants' arguments, is in the manner of demonstrating that [he] had a propensity for committing burglary [and is thus] inadmissible under Rule 404(b)"); see also *Earl v.*

*Denny's, Inc.*, No. 01-5182, 2002 WL 31819021, at *8 (N.D. Ill. 2002) ("[A] jury may deny plaintiff a verdict and an award, not because it doubts [plaintiff's] veracity, but because it is appalled by his prior conduct that has nothing to do with the events in question. That is precisely the kind of unfair prejudice that Rule 403 seeks to prevent").

Evidence of prior arrests of plaintiff was not probative of any issue in this case and was prejudicial to plaintiff, because the jury was led to believe that plaintiff was a bad character and should not be believed. This was error and a new trial should be granted.

## PLAINTIFF IS ENTITLED TO A NEW TRIAL BECAUSE THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE

Plaintiff continues to maintain that defendants' admissions regarding probable cause were dispositive of the probable cause issue. The admissions which were read to the jury included the following:

> Defendants Ronald Lis, Elizabeth Wilson, Richard Novotny, and Bradley Ruzak admit that they have that they have no present recollection of probable cause or reasonable suspicion sufficient for the arrest or stop of Larry Nelson on February 11, 2008.

*Trial p. 486:5 - 8.*

> No information obtained by Chicago police officers as result of the inquiries of Larry Nelson's name on computer databases on February 11, 2008, gave the officers any probable cause to arrest him.

*Trial p. 487:11 - 14.*

At trial, defendants had no present recollection of any facts supporting probable cause for the stop. Upon questioning by plaintiff's counsel, *each one of the defendants stated that he or she did not deny* that they were at N. Pulaski and W. Iowa on February 11, 2008, that they stopped Larry Nelson, that they pulled their guns, that they cuffed plaintiff, that they detained him for up to 30 minutes, and that they searched his vehicle. Defendant Wilson - *Trial p. 383:2 - 384:3.* Defendant Ruzak - *Trial p. 421:23 - 423:9.* Defendant Lis - *Trial p. 453:25 - 454:25.* Defendant Novotny - *Trial p. 465:11 - 466:9.*

Defendants thus did not deny that they did what plaintiff said they did. Testimony was elicited at trial moreover that defendants engaged in a cover-up by failing to contact the dispatcher about plaintiff's detention, failing to prepare a contact card, and failing to fully cooperate with the Independent Police Review Authority. Defendants

14

initially denied they were the officers involved in this incident, despite the fact that computer records pointed straight at them. They persisted in their denial up until the point of trial, when they shifted gears and said that maybe it was them.

Plaintiff clearly and credibly testified that his vehicle was stopped by defendant officers without any basis for probable cause and that he lived through a terrifying experience when the officers barked out conflicting orders while pointing a gun at plaintiff's head. Mr. Nelson was unreasonably detained in handcuffs in open view on a public road for no good reason. *Trial p. 193:23 - 207:25; 209:15 - 210:2.*

The Court may grant a new trial where the verdict is against the weight of the evidence or if for other reasons the trial was not fair to the moving party. *Winger v. Winger,* 82 F.3d 140, 143 (7th Cir.1996) (quoting *McNabola v. Chicago Transit Authority,* 10 F.3d 501, 516 (7th Cir.1993). Plaintiff contends that the verdict was against the weight of the evidence and the jury verdict resulted in a miscarriage of justice. *Davis v. Wisconsin Dept. of Corrections,* 445 F.3d 971, 979 (7th Cir.2006).

Mr. Nelson is a community leader and an upstanding citizen who was abused by defendants officers, who made up their own rules on the streets, instead of abiding by the Fourth Amendment. The weight of the evidence at trial was clearly with the plaintiff. The jury verdict was against the weight of the evidence and a new trial should be granted.

WHEREFORE, plaintiff, Larry G. Nelson, respectfully requests that the Court grant plaintiff LARRY G. NELSON a new trial because of the prejudicial error which occurred and because the verdict was against the weight of the evidence.

Dated: December 20, 2010                /s/    Irene K. Dymkar
                                       Irene K. Dymkar

Attorneys for Plaintiff:

Irene K. Dymkar
300 W. Adams Street, Suite 330
Chicago, IL 60606-5107
(312) 345-0123

James L. Bowers
631 N. Central
Chicago, IL 60644-1507
(773) 379-9262