UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LARRY G. NELSON, | ) |
| Plaintiff, | ) |
| | ) Case No. 09 C 883 |
| v. | ) |
| | ) Judge Rebecca R. Pallmeyer |
| RONALD LIS, ELIZABETH WILSON, | ) |
| RICHARD NOVOTNY, BRADLEY RUZAK, | ) Magistrate Judge Arlander Keys |
| and CITY OF CHICAGO, | ) |
| Defendants. | ) |

**PLAINTIFF'S MOTION TO SET ASIDE JUDGMENT PURSUANT TO
F.R.Civ.P. 60(b)(3) and 60(d)(3), and MOTION FOR SANCTIONS**

Plaintiff, Larry G. Nelson, by and through his attorneys, Irene K. Dymkar and James L. Bowers, hereby moves this Court to reverse the jury verdict pursuant to F.R.Civ.P. 60(b)(3) and 60(d)(3) and to assess sanctions against defendants or the trial attorney, Avi Kamionski, both because of his misconduct and because of the fraud upon the Court.

At trial, defense attorney Avi Kamionski deliberately offered false evidence, which constituted misconduct and fraud. Mr. Kamionski knew that it was false that plaintiff's vehicle plate registration was expired when he was stopped by defendant police officers on February 11, 2008. Yet Mr. Kamionski unabashedly asked an obviously leading question of an uninformed, unqualified witness, Margarita Galindo, from the Independent Police Review Authority, in order to swiftly and indelibly place the falsehood before the jury and thereby lead the jury into believing that there was probable cause to arrest the plaintiff.

Plaintiff, Larry G. Nelson, had a meritorious claim and was prevented from "fully and fairly presenting" it at trial as a result of the adverse party's fraud, misrepresentation, or misconduct. *Ty, Inc. v. Softbelly's, Inc.,* 353 F.3d 528, 536 (7th Cir.2003), *2nd appeal,* 517 F.3d 494 (7th Cir.2008). While the Seventh Circuit does not require a showing that the fraud

or misconduct have altered the result of the case, plaintiff contends that there is a strong possibility or probability in this case that it did.

### The Misconduct

Margarita Galindo was an investigator employed by the Independent Police Review Authority of the Chicago Police Department, whose job it was to conduct investigations into police misconduct and allegations of excessive force. *Trial p. 263:24 - 264: 1.* She was asked by defense counsel to interpret an Office of Emergency Management and Communications (OEMC) record that even the OEMC document witness (Jill Maderak) was not able to identify or authenticate. *Trial p. 372:14 - 373:11.* (The relevant page of the trial exhibit was attached to plaintiff's original motion for a new trial as Exhibit E (*Document 124-6*)).

The overwhelming leading question that defense counsel Avi Kanionski blurted out before being objected to by plaintiff's counsel was: "Do you know why the officer received a message that his license was expired? His license plate was expired 9/2007." *Trial p. 315:15 - 16.* Defense counsel was asking for the meaning of an entry in the Portable Data Terminal (PDT) Messages Log generated by the computer in defendant Wilson and Ruzak's squad car. Uninformed and unqualified, Ms. Galindo responded, essentially, that the entry "9466535 EXP / 092007" indicated that plaintiff's vehicle registration was expired on September of 2007. *Trial p. 316:3.* This was not true.

Defense counsel fraudulently put forth this false testimony. Plaintiff argued that this was unfair. *Trial p. 488:20 - 495:17.* Plaintiff moved for a mistrial, based on this wholly unanticipated and surprise false testimony. *Document 115.* This motion was argued at length. *Trial p. 530:22 - 548:1.* The Court gave a curative instruction. Nevertheless, the false testimony by Ms. Galindo, deliberately and fraudulently elicited by

defense counsel Avi Kamionski, that plaintiff's vehicle registration was suspended or expired, was devastating to plaintiff's case.

Plaintiff had a meritorious claim that there was no probable cause for his arrest. He was prevented from "fully and fairly presenting" that claim at trial as a result of the adverse party's fraud, misrepresentation, or misconduct. Plaintiff contends that serious misconduct requires a commensurately severe sanction, which may include dismissal of a defense and sanctions. *See Ty, Inc. v. Softbelly's, Inc.,* 353 F.3d 528, 537 (7th Cir.2003), *2nd appeal,* 517 F.3d 494 (7th Cir.2008).

### The Standard is "Fairness of the Proceedings," Not Correctness of Verdict

Pursuant to F.R.Civ.P. 60(b)(3), the court may set aside a judgment if a party engaged in "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by opposing party." Pursuant to F.R.Civ.P. 60(d)(3), the court may set aside a judgment for fraud on the court. F.R.Civ.P. 60(b)(3) does not displace a judge's inherent power to set aside a judgment for fraud on the court. *Wickens v. Shell Oil Co.,* 2010 WL 3398160 * 10 (7th Cir.August 31, 2010).

A court's ability to vacate a judgment based on false testimony applies both to intentional and unintentional misrepresentation. *Lonsdorf v. Seefeldt,* 47 F.3d 893, 897 (7th Cir.1995), *White v. Anthology, Inc.,* 2009 WL 4215096 *3 (N.D.Ill. Nov.16,2009) (case involving presentation of false testimony by defendant's employees). If a party or their attorney acted "in reckless disregard of the truth, [that] is the equivalent of making a knowing misrepresentation" *White, supra,* citing *United States v. Crabtree,* 979 F.2d 1261, 1269 (7th Cir.1992) (reckless disregard is equivalent to intent), *Pugh v. Tribune,* 521 F.3d 686, 693 (7th Cir.2008) (reckless disregard is equivalent to *scienter*).

The purpose of the rule permitting granting a new trial or vacating a judgment based on misrepresentation is to protect the fairness of the proceedings, not necessarily the correctness of the verdict. *Lonsdorf,* 47 F.3d at 897-98. The alleged misrepresentation

need not have altered the result of the case as a prerequisite to relief under Rule 60(b)(3). *Id., Snowden v. Litton Loan Servicing, Inc.,* 356 B.R. 429, 435 (N.D.Ill.2006), *National Organization for Women, Inc. v. Scheidler,* 2001 WL 301143 *4 (N.D.Ill.March 28, 2001). In *Lonsdorf*, defendant had materially altered a document admitted into evidence. A new trial was granted without a showing that the verdict would have been different if the false evidence had not been introduced.

The question for the Court to consider is whether the complaining party had a meritorious claim and was prevented from "fully and fairly presenting" that claim at trial as a result of the adverse party's fraud, misrepresentation, or misconduct. *Ty, Inc. v. Softbelly's, Inc.,* 353 F.3d 528, 536 (7th Cir.2003), *2nd appeal,* 517 F.3d 494 (7th Cir.2008). The victim of the fraud or other misconduct need show only that it affected his ability to present his case, not that he would have won had the fraud or misconduct not occurred. *Id.*

It is ironic that one of the attorneys who has appeared in the present case, Andrew M. Hale, was also the defense attorney in *Ty, Inc., supra,* the seminal case here. In *Ty, Inc.* Mr. Hale accused the CEO of plaintiff company of improperly influencing a star witness for the defense and claimed that this was fraud on the court and on defendant. Mr. Hale thus was instrumental in setting the standard for relief under F.R.Civ.P. 60(b)(3) as being whether a party was prevented from "fully and fairly presenting" his claim at trial because of misconduct from the opposing party.

### Defense Counsel Deliberately Offered False Evidence, Which Constituted Misconduct and a Fraud on the Court

There is no doubt that defense counsel Avi Kamionski knew exactly what he was doing and that his actions were deliberate when he blurted out the leading question to Margarita Galindo of the Independent Police Review Authority: "Do you know why the officer received a message that his license was expired? His license plate was expired 9/2007." *Trial p. 315:15 - 16.* The leading question was blurted out so as to swiftly and

indelibly place in the jurors' minds the thought that defendant officers had probable cause to stop plaintiff. It was no accident that this question was asked the way it was asked and that the prejudicial answer was elicited from an unqualified witness. The maneuver was craftly planned by defense counsel.

It is unequivocal that Mr. Kamionski knew the evidence was false because:

> A) Every defendant (Elizabeth Wilson, Bradley Ruzak, Ronald Lis, and Richard Novotny) viewed the exact same Portable Data Terminal (PDT) Messages Log as Ms. Galindo at their January 20, 2010, depositions. Each defendant testified under oath upon reviewing the record that there was no problem with Larry Nelson's license or vehicle registration and that the record gave them no probable cause to arrest Mr. Nelson.
>
> B) The defendants made admissions in response to plaintiff's requests to admit that "[n]o information obtained by Chicago police officers as result of the inquiries of Larry Nelson's name on computer databases on February 11, 2008, gave the officers any probable cause to arrest him."
>
> C) When they were on the stand at trial, Mr. Kamionski did not ask his clients, Officers Wilson, Ruzak, Lis, and Novotny, to review the PDT Messages Log to say that it gave them probable cause for the arrest, because Mr. Kamionski knew that this would be suborning perjury.
>
> D) Mr. Kamionski knew that on the same page of the police computer record from which Ms. Galindo testified, there was an entry "VAL/11072007" which indicated that Mr. Nelson's registration was valid as of November 7, 2007.
>
> E) Mr. Kamionski was sitting next to Officers Wilson, Ruzak, Lis, and Novotny the entire trial. If there were any doubt that the PDT Messages Log indicated anything other than what the four defendants had testified to at deposition and admitted in response to requests to admit, then counsel could have conferred with his clients.

**A) Each defendant reviewed the record at deposition and swore under oath there was nothing wrong with plaintiff's license or registration**

At their discovery depositions on January 20, 2010, each of the defendant officers was shown the exact same PDT Message Log as Margarita Galindo and each was questioned about the Office of Emergency Management and Communications record.

5

Officer Novotny identified his Deposition Exhibit 4 as the PDT Message Log.

*Exhibit A (Novotny deposition transcript) p. 61:16 - 19.* He was then questioned in the presence of defense counsel as follows:

> Q: Is there anything that appears on Exhibit 4 in regard to Larry Nelson that would indicate probable cause to arrest him?
>
> Objection, form.
>
> A: Anything that appears on Exhibit 4?
>
> Q: Anything that appears pertaining to Larry Nelson.
>
> A: I don't see anything on Exhibit 4 that I'm reading that says he should be arrested exhibited on this sheet of paper, no.

*Exhibit A (Novotny deposition transcript) p. 66:6 - 16.*

Officer Ruzak identified his Deposition Exhibit 9 as the PDT Message Log. *Exhibit B (Ruzak deposition transcript) p. 38:12 - 17.* He was then questioned in the presence of defense counsel as follows:

> Q: Is there anything that you see on this message, either from the Secretary of State or from the LEADS system, that shows that there is any probable cause to arrest Larry Nelson?
>
> Objection, form, incomplete hypothetical.
>
> A: On these pieces of paper, it does not state any reason to arrest Larry Nelson. These three pieces of paper that all say at the top, "Office of Emergency Management and Communications."

*Exhibit B (Ruzak deposition transcript) p. 40:24 - 41:10.*

Officer Wilson identified her Deposition Exhibit 9 as the PDT Message Log.

*Exhibit C (Wilson deposition transcript) p. 24:15 - 19.* She was then questioned in the presence of defense counsel as follows:

> Q: Was there any indication that there was any problem with Larry Nelson's license
>
> Objection, form.
>
> Q: .... from what you can tell from this text?
>
> A: Not from this.

*Exhibit C (Wilson deposition transcript) p. 26:3 - 8.*

6

Officer Lis identified his Deposition Exhibit 4 as the PDT Message Log. *Exhibit D (Lis deposition transcript) p. 40:13 - 19*. He was then questioned in the presence of defense counsel as follows:

> Q: Okay. From looking at this information, the text under the column Message, is it your understanding that this says that there is no problem with Larry Nelson's license and car registration?
>
> Objection, form, foundation, calls for speculation.
>
> A: From what I can see here, it's showing me that his license plate is valid, but that's all the information I'm seeing as far as Larry Nelson.

*Exhibit D (Lis deposition transcript) p. 43:23 - 44:8*.

Two salient conclusions arise from the above deposition testimony. First, at the time of the stop, none of the defendant officers was aware of any license or registration expiration issues, on the basis of the PDT messages or any other observations. Second, the officers admitted that the PDT Messages Log did not show a problem with plaintiff's license or registration.

Mr. Kamionski knew that all four defendant officers had testified under oath at their depositions that there was nothing wrong with plaintiff's license or registration. He knew that the testimony he was eliciting from Ms. Galindo was false. As the Court pointed out, the Court was mislead into thinking this was a "late breaking discovery," when in fact it was not. *Trial p. 531:1 - 5, 536:2 - 14*. It was the falsification of evidence and an ambush of plaintiff.

### C. Defendants' admissions regarding probable cause are dispositive.

All four defendants had made the following admissions in response to plaintiff's requests to admit prior to trial (which were read at trial):

> Defendants Ronald Lis, Elizabeth Wilson, Richard Novotny, and Bradley Ruzak admit that they have that they have no present recollection of probable cause or reasonable suspicion sufficient for the arrest or stop of Larry Nelson on February 11, 2008.

*Trial p. 486:5 - 8*.

7

> No information obtained by Chicago police officers as result of the inquiries of Larry Nelson's name on computer databases on February 11, 2008, gave the officers any probable cause to arrest him.

*Trial p. 487:11 - 14.*

Mr. Kamionski was bound by these admissions and it was wrong for him to attempt a back-door approach to retract those admissions. If at trial defendants have no present recollection of any facts supporting probable cause for the stop, it is logically impossible for there to be any evidence of facts that they knew at the time of the stop. What Margarita Galindo believed, wrongly, the meaning of the PDT messages to be is completely irrelevant. The only thing admissible is what the officers themselves actually knew at the time of the stop. By their admissions, they knew nothing. Mr. Kamionski attempted to circumvent these admissions by presenting evidence he knew to be false.

### C. Defendants declined to testify on the stand that the PDT Messages Log gave them probable cause for the stop.

The Court noted that defendants never took the stand to testify that the PDT Messages Log provided them with any probable cause to stop plaintiff. Said the Court:

> THE COURT: And put them on the stand and say, "Yes. We" -- "I didn't recall at the time, but I now recognize that the printout probably prompted me to believe that Mr. Nelson had a license problem." They haven't said anything like that.

*Trial p.* 535:11 - 14.

None of the defendant officers made any attempt to connect up the false and speculative testimony of Margarita Galindo with their own observations. Mr. Kamionski did not ask defendant officers about the PDT Messages Log because then he would have been suborning perjury. Instead, Mr. Kamionski took advantage of an unwitting City employee to elicit the false testimony so that he could poison the water for the jury. This was misconduct and a fraud on the Court.

**D. Mr Kamionski knew that on the same page of the police computer record from which Ms. Galindo testified, there was an entry "VAL/11072007" which indicated that Mr. Nelson's registration was valid as of November 7, 2007.**

Mr. Kamionski fraudulently drew the jury's attention to an entry on the PDT Messages Log that indicated an expiration of plaintiff's vehicle registration ("9466535 EXP / 092007"). (The relevant page of the exhibit was attached to plaintiff's original motion for a new trial as Exhibit E (*Document 124-6*)). On the same page of the police computer record, however, there was an entry "VAL/11072007" which indicated that Mr. Nelson's registration was valid as of November 7, 2007, three months before his arrest.

The Court saw through defense counsel's protestations that the police computer records were confusing. Said the Court:

> The police officers should understand the records; and from what we know now, there is no reason to believe they didn't. It's entirely -- it seems consistent with the record, certainly consistent with the deposition testimony, that they did understand the vague and confusing records they were looking at. At least they understood them well enough at the time of their depositions to say, "Nothing in these records provides me a reason to pull this man over." That's essentially what they said in their depositions.

*Trial, p 547:17 - 548:1*.

Mr. Kamionski knew that the PDT Messages Log indicated that Larry Nelson had a valid license and vehicle registration on the date of his arrest, February 11, 2008. He committed a fraud on the Court and hampered plaintiff from "fully and fairly presenting" his case by highlighting one entry on a computer record when he knew that the record as a whole showed that plaintiff's license and registration were valid.

**E. Mr. Kamionski was sitting next to and could confer with four defendant police officers if he had any questions about the PDT Messages Log**

Mr. Kamionski knew exactly what he was doing and he deliberately promoted false testimony and evidence. It is not credible that he did not understand the records he had up on the screen at trial or that none of the four defendants understood those records. The

9

Court is right - "there is no reason to believe they didn't" understand those records, especially given defendants' deposition testimony. *Supra*.

### Conclusion

It was no accident that defense counsel Avi Kamionski blurted out the leading question to Margarita Galindo: "Do you know why the officer received a message that his license was expired? His license plate was expired 9/2007." *Trial p. 315:15 - 16*. It was no accident that Mr. Kamionski asked an uninformed and unqualified witness from the Independent Police Review Authority to interpret records from the Office of Emergency Management and Communication (OEMC) that even the OEMC witness could not interpret. Mr. Kamionski's intention was to deceive the Court and ambush the plaintiff.

As argued above, a Court's ability to vacate a judgment based on false testimony applies both to intentional and unintentional misrepresentation. *Lonsdorf v. Seefeldt,* 47 F.3d 893, 897 (7th Cir.1995), *White v. Anthology, Inc.,* 2009 WL 4215096 *3 (N.D.Ill. Nov.16,2009. If a party or their attorney acted "in reckless disregard of the truth, [that] is the equivalent of making a knowing misrepresentation" *White, supra,* citing *United States v. Crabtree,* 979 F.2d 1261, 1269 (7th Cir.1992) (reckless disregard is equivalent to intent), *Pugh v. Tribune,* 521 F.3d 686, 693 (7th Cir.2008) (reckless disregard is equivalent to *scienter*).

The offending acts do not have to be deliberate, but in this case they were. The misrepresentation does not have to be intentional, but in this case it was. Plaintiff had a meritorious claim and was prevented from "fully and fairly presenting" that claim at trial as a result of the adverse party's fraud, misrepresentation, or misconduct. See *Ty, Inc. v. Softbelly's, Inc.,* 353 F.3d 528, 536 (7th Cir.2003), *2nd appeal,* 517 F.3d 494 (7th Cir.2008). The fraud, misrepresentation, or misconduct affected plaintiff's ability to present his case, regardless of whether he would have won the trial had the fraud or misconduct not occurred. *Id*. The fairness of the proceedings was compromised by defense counsel's actions.

10

**Relief Requested**

According to the case law that Andrew M. Hale, one of the defense attorneys in this case, helped create, serious misconduct by a party or attorney requires a commensurately severe sanction, which may include dismissal of a defense and sanctions. *See Ty, Inc. v. Softbelly's, Inc.,* 353 F.3d 528, 537 (7th Cir.2003), *2nd appeal,* 517 F.3d 494 (7th Cir.2008). Plaintiff asks the Court to reverse the jury verdict and find for the plaintiff on all counts of the complaint.

In addition, relief under a F.R.Civ.P. 60(b)(3) or 60(d)(3) motion can include sanctions. *Id.* Plaintiff asks the Court to award attorneys' fees and costs for the trial of this matter. In addition, plaintiff asks the Court to award attorneys' fees for the bringing of the motion for a new trial and this motion to set aside the judgment.

Plaintiff also asks the Court to consider assessing the fees and costs personally to defense counsel under the authority of 28 U.S.C. § 1927, which provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." This statute provides a remedy for bad faith misconduct by an attorney in pursuit of a case in court. See *In re TCI Ltd., Needler & Assocs., Ltd.,* 769 F.2d 441, 445-46 (7th Cir.1985). "The principle underlying § 1927, Rule 11, and the bad faith exception to the American Rule is that in a system requiring each party to bear its own fees and costs, courts will ensure that each party really does bear the costs and does not foist expenses off on its adversaries." *Id. at 446*.

A Court may impose sanctions under 28 U.S.C. § 1927 "when an attorney has acted in an objectively unreasonable manner by engaging in serious and studied disregard for the orderly process of justice . . . pursued a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound." *Jolly Group, Ltd v. Medline Indust.,Inc,* 435 F.3d 717 (7th Cir.2006), rehearing denied.

11

As Judge James Zagel said in a case in which Rule 11 sanctions were discussed:

> This court is neither insensitive to the attorney's duty to advocate zealously on behalf of a client, nor unaware that within the adversary system facts may reasonably be slanted within the limits of propriety through the manipulation of language. But the admittedly fine line between zealous advocacy and misrepresentation, between slanting and distorting, appears decisively to have been crossed here.

*Tokio Marine and Fire Ins. Co., Ltd. v. Amato Motors, Inc.,* 871 F.Supp. 1010, 1017 (N.D.Ill.,1994).

Attorney Avi Kamionski crossed over the line of propriety in this case. As a result, plaintiff could not "fairly and fully present" his claim. Plaintiff did not receive a fair trial and he respectfully asks the Court for relief.

WHERFORE, plaintiff asks the Court to reverse the jury verdict, and assess sanctions in the amount of attorneys' fees and costs for the trial of this matter, as well as attorneys' fees for the bringing of the motion for a new trial and this motion to set aside the judgment.


Dated: January 4, 2011                    /s/     Irene K. Dymkar
                                                  Irene K. Dymkar


Attorneys for Plaintiff:

Irene K. Dymkar
300 W. Adams Street, Suite 330
Chicago, IL 60606-5107
(312) 345-0123

James L. Bowers
631 N. Central
Chicago, IL 60644-1507
(773)397-9262