# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LARRY G. NELSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 09 C 883 |
| RONALD LIS, ELIZABETH WILSON, RICHARD NOVOTNY, BRADLEY RUZAK, and CITY OF CHICAGO | ) Judge Rebecca R. Pallmeyer ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Larry G. Nelson alleges that four Chicago police officers violated his civil rights during a traffic stop on February 11, 2008. A jury found in favor of each of the Defendants—Officers Ronald Lis, Elizabeth Wilson, Richard Novotny, and Bradley Ruzak—and Plaintiff now moves for a new trial, to set aside the verdict, and for sanctions. The court is satisfied that its evidentiary rulings were correct and that the jury's verdict is supported by the evidence. The court did, however, adopt an instruction proposed by Defendants that departs in a potentially prejudicial way from the Seventh Circuit pattern instruction. Although the court corrected that instruction during the jury's deliberations, it now concludes the error requires a new trial. For the reasons explained here, Plaintiff's motion for a new trial is granted. His remaining motions are denied.

## FACTUAL BACKGROUND

In this lawsuit brought under 42 U.S.C. § 1983, Nelson alleged that he was stopped and detained without probable cause in violation of the Fourth Amendment. Prior to trial, all four Defendants acknowledged, in response to a request to admit facts, that they had "no present recollection of probable cause or reasonable suspicion sufficient for the arrest or stop of Larry Nelson on February 11, 2008." Plaintiff Nelson did recall the events of February 11, 2008, and

testified as follows: At 9:30 p.m. that evening, Larry Nelson was driving his car out of a gas station near the intersection of North Pulaski and West Iowa in Chicago when he was pulled over by four police officers in two squad cars. (Trial Tr., 193, 197, 383.) Plaintiff testified that after he pulled his car to the side of the road, he turned the car off, took the keys out of the ignition, and raised his hands in the air. (*Id.* at 198.) One officer—later identified as Bradley Ruzak—approached the car with his gun drawn, and Plaintiff recalls seeing a laser sight pointed at his face. (*Id.* at 198.) At some point, other Defendants, including Richard Novotny, also approached Nelson's vehicle. (*Id.* at 199.) Nelson testified that the officers issued conflicting instructions: Ruzak told him, "Don't move or I'll blast your ass," and Novotny ordered him to exit his car. (*Id.*) Plaintiff claims Novotny opened the car door, handcuffed Plaintiff, and removed him from the vehicle. (*Id.* at 201.) Then, Plaintiff testified, he was left handcuffed near one of the police cars while all four officers searched his car. (*Id.* at 206.) When the officers finished searching the car, they released Nelson from the handcuffs and directed him to leave. (*Id.* at 208.)

## I. Motion for New Trial

Plaintiff's Rule 59 motion challenges the verdict for Defendants on both grounds that support such a motion: he argues that prejudicial errors occurred at trial and that the verdict is contrary to the manifest weight of the evidence. *See Romero v. Cincinnati, Inc.*, 171 F.3d 1091, 1096 (7th Cir. 1999) (identifying these two categories of reasons for granting relief under Rule 59). For the reasons set forth below, the court grants Plaintiff's motion for new trial based on a potentially prejudicial error in the jury instructions, which overstated the elements necessary to establish liability in § 1983 false arrest cases. Plaintiff's remaining evidentiary concerns, however, are insufficient to support his Rule 59 motion and the court rejects Plaintiff's argument that the jury's verdict was contrary to the manifest weight of the evidence.

### A. "Harm" Instruction

Plaintiff's most compelling argument in this regard relates to an error in the elements instruction. Plaintiff takes issue with the court's initial instruction regarding the elements of Plaintiff's false arrest claim. The court instructed that in order to prevail, Plaintiff was required "to prove each of these things by a preponderance of the evidence: (1) that plaintiff was illegally stopped and seized by defendant; (2) that defendants did not have probable cause to seize plaintiff; and (3) that because of the unreasonable seizure, the plaintiff was harmed." (Trial Tr. at 598-99.) Plaintiff argues that the third element is improper because it led the jury to believe that Plaintiff had to demonstrate physical harm in order to succeed in his claims. In fact, the jury twice submitted questions to the court that involved the "harm" element. (*Id.* at 680, 689-90.)[1] In addressing these questions, the court recognized that the instruction it had given, proposed by Defendants, is inconsistent with the Seventh Circuit Pattern Instruction No. 7.05. (*Id.* at 693.)[2] The court then withdrew that instruction (*Id.* at 901-04.), but Plaintiff argues that the damage had been done, and that the jury's verdict was infected by its misunderstanding concerning his burden.

#### 1. Waiver

Defendants acknowledge the instruction they proposed overstated Plaintiff's burden, but they argue that this error does not require a new trial. They argue, first, that Plaintiff has waived the right to challenge the instruction by failure to object to it. *See* FED. R. CIV. P. 51(c) (parties must

---

[1] In the first instance, the jury submitted a note containing the three-element false arrest instruction, circled the "harm" element, and wrote "Please clarify," and beneath that the words, "Should this be listed on the jury form?" (Trial Trans. at 680.) In the second instance, the jury's note again listed the three-element false arrest instruction and asked the court, "Does the jury have to find that all of the above occurred to find for plaintiff?" (*Id.* at 689-90.)

[2] The Seventh Circuit's pattern jury instruction for § 1983 false arrest claims provides that a plaintiff must prove three elements by a preponderance of the evidence: "1. Defendant arrested Plaintiff; 2. Defendant did not have probable cause to arrest Plaintiff; and 3. Defendant was acting under color of law." 7TH CIR. PATTERN CIVIL JURY INSTRUCTIONS 7.05. The pattern instructions address damages in § 1983 cases separately. *See id.* 7.22-.24.

3

alert the district court specifically of perceived errors in jury instructions). To satisfy the requirements of Rule 51, "the grounds of the objection must be stated with enough specificity so that the trial judge is adequately apprised of the legal or factual basis for the objection." *Guerts v. Barth*, 892 F.2d 622, 624 (7th Cir. 1989); *see also Schobert v. Ill. Dep't of Transp.*, 304 F.3d 725, 729 (7th Cir. 2002) ("The objection must be specific enough that the nature of the error is brought into focus."). Defendants contend Plaintiff's comments at the instructions conference did not meet this standard:

> Mr. Kamionski (Defendants' counsel):
> I – the more I look at it, I'm okay with it, I think, except I think one more element should be added that he has to be damaged or harmed. Other than that, I am okay with it.
>
> Ms. Dymkar (Plaintiff's counsel):
> But that's addressed elsewhere, Your Honor. This is a definition of liability and –
>
> The Court:
> Right. But I do think that liability requires some showing of harm.
>
> . . . .
>
> Ms. Dymkar:
> Your honor, as long as it's clear that the harm can be emotional. That's why the damages section is really preferable, because that sets forth that it doesn't have to be physical, it can be emotional, and that's why I think it's preferable to separate the liability and the damages in separate instructions.
>
> The Court:
> Actually, that's a good point. And just an observation. I think with respect to that, the language proposed by the defendants, the plaintiff has to show harm. We will end the sentence after "harmed" and then we will talk about damages later.

(Trial Tr. 550-52.)

Defendant notes Ms. Dymkar's qualifier, "as long as it's clear that the harm can be emotional," and suggests that with that language, Plaintiff effectively approved of the proposed liability instruction. *See United States v. Griffin*, 493 F.3d 856, 863 (7th Cir. 2007) ("[A] defendant waives the right to object to a jury instruction on appeal if the record demonstrates that the

4

defendant approved of the proposed instruction."). The court disagrees. Rule 51 does not require a litigant to adhere to the "formalities of language and style" in order to preserve an objection. *Guerts v. Barth*, 892 F.2d 622 (7th Cir. 1982). In this case, after Plaintiff's own proposed instruction was rejected, he argued that by requiring a showing of harm, the instructions to the jury improperly conflated the issues of damages and liability. (Trial Tr. at 550.) Plaintiff later expressed concern that requiring the jurors to consider harm could cause confusion unless it is clear that the harm can be emotional. (*Id.* at 552.) These statements were sufficient to alert the court and to supply a factual basis for the court to consider Plaintiff's objections. Plaintiff explicitly opposed mention of "harm" as an element of proof on the ground that it could lead to jury confusion. For counsel to further belabor the point with a formal objection would have served little purpose.

        **2.     Error**

The district court is responsible to craft jury instructions that will accurately and completely inform the jury of the applicable law. *Schmitz v. Canadian Pac. Ry. Co.*, 454 F.3d 678, 681-82 (7th Cir. 2006). A new trial is warranted when the instructions "'misstate the law or fail to convey the relevant legal principles in full' and when those shortcomings confuse or mislead the jury and prejudice the objecting litigant." *Huff v. Sheahan*, 493 F.3d 893, 899 (7th Cir. 2007) (quoting *Byrd v. Ill. Dep't of Pub. Health*, 423 F.3d 696, 705 (7th Cir. 2005). In determining whether the instructions adequately informed the jury of the applicable law, the court must consider the instructions in their entirety rather than in isolation. *Alcala v. Emhart Indus., Inc.*, 495 F.3d 360, 363 (7th Cir. 2007).

The court agrees with Plaintiff that the instruction it gave had the potential to confuse the jury. While harm to the plaintiff is a valid consideration in claims for false arrest, it is to be considered in connection with damages rather than with liability. *See, e.g., Kiswani v. Phoenix Sec. Agency, Inc.*, 247 F.R.D. 554, 557-558 (N.D. Ill. 2008) (citing 7TH CIR. PATTERN CIVIL JURY INSTRUCTIONS 7.23). This principle is reflected in the Seventh Circuit Pattern Jury Instructions; counsels' (and the court's) failure to consult those pattern instructions at the time of the instructions

5

conference is disappointing. And, in light of the questions the jury raised during their deliberations, there is reason to conclude that the flawed instruction confused the jury and resulted in prejudice. Plaintiff's motion for a new trial is granted.

**B.     Evidentiary Concerns**

Having concluded that the instructional error supports a new trial in this case, the court need not reach all of Plaintiff's remaining arguments. Because those arguments may be raised at the retrial of this case, however, the court will address them briefly.

### 1.     Novotny's Testimony Concerning Custom and Practice

First, Plaintiff has challenged the court's decision to allow Defendant Novotny to testify regarding his normal conduct during traffic stops. Plaintiff characterizes this testimony as speculation and argues that it could unfairly prejudice, confuse, or mislead the jury. Federal Rule of Evidence 403 states that evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice," FED. R. EVID. 403, but in the context of this case, the court believes the probative value of Novotny's testimony outweighs the potential prejudice. In making that determination, the court must consider the availability of other evidence. *See* FED. R. EVID. 403 advisory committee's note; *see also United States v. Zapata*, 871 F.2d 616 n.6 (7th Cir. 1989). In this case, where Defendants have no recollection of the incident in question, there is very little evidence they can offer beyond illustrating how Plaintiff's account of the incident departs from official procedure.

On the other side of the balance, the risk of unfair prejudice to the Plaintiff is relatively low. The court twice instructed the jury that Novotny's statements were general background information and were not intended to convey what actually happened on the evening in question. (Tr. 474-75.) As a general rule, "[a]bsent any showing that the jury could not follow the court's limiting instruction, we presume that the jury limited its consideration of the testimony in accordance with the court's instruction." *Unites States v. Zahursky*, 580 F.3d 515, 525-26 (7th Cir. 2009) (quotation omitted);

*see also United States v. Vargs*, 552 F.3d 550, 557 (7th Cir. 2008) ("[W]e assume that limiting instructions are effective in reducing or eliminating unfair prejudice."). In addition, Novotny's testimony, and the questions that elicited it, was phrased in a clearly hypothetical fashion; defense counsel never asked him what might have happened at the time of this incident, but instead asked in a general way why an officer might draw his gun during a traffic stop or conduct a vehicle search. (Trial Tr. at 474, 478-79.) Plaintiff's continued objection to Defendant Novotny's testimony is overruled.

### 2. Other Lawsuits

Nor does the court share Plaintiff's concern that the admission of evidence regarding other cases he brought against police was error. Evidence of prior acts is admissible if it meets a four-part test: "'(1) the evidence must be directed toward establishing something at issue other than a party's propensity to commit the act charged; (2) the other act must be similar enough and close enough in time to be relevant to the matter at issue; (3) the evidence must be such that the jury could find that the act occurred and the party in question committed it; and (4) the prejudicial effect of the evidence must not substantially outweigh its probative value.'" *Mathis v. Phillips Chevrolet, Inc.*, 269 F.3d 771, 775-76 (7th Cir. 2001) (quoting *Gastineau v. Fleet Mortg. Corp.*, 137 F.3d 490, 494-95 (7th Cir. 1998)). This final factor is essentially an adoption of the standard in Rule 403. *See, e.g.*, *United States v. Ciesiolka*, 614 F.3d 347, 357-58 (7th Cir. 2010) ("We have previously explained that the Rule 403 standard incorporated in the requisite test for admitting evidence under Rule 404(b) has teeth."). In arguing that the "other lawsuits" evidence does not meet this test, Plaintiff cites *Mathis v. Philips Chevrolet, Inc.*, where the Seventh Circuit upheld the district court's decision to exclude evidence that the plaintiff had filed numerous previous discrimination claims against former and prospective employers. 269 F.3d at 777. The only apparent purpose of admitting that evidence was to demonstrate plaintiff's litigious character. *Id.* at 776.

Plaintiff suggests *Mathis* requires a showing that a plaintiff's previous lawsuits were fraudulent before evidence of them may properly be admitted. *Mathis* did not articulate such a bright-line rule, however; instead, the court simply observed that "[w]hen 'the same evidence has legitimate and forbidden uses, when the introduction is valuable yet dangerous,' the district court has great discretion in determining whether to admit the evidence." *Id.* at 776-77 (quoting *United States v. Beasley*, 809 F.2d 1273, 1278 (7th Cir. 1987)). The *Mathis* court noted that the district court was reluctant to engage in a series of "mini-trials" regarding the merits of those earlier lawsuits, but the Seventh Circuit's ruling affirming the district court's judgment turned on the conclusion that the challenged evidence serving no genuine purpose beyond demonstrating Mathis's litigiousness. *Mathis*, 269 F.3d at 776-77. In contrast, the Seventh Circuit affirmed the district court's judgment allowing evidence of earlier lawsuits against former employers in a Title VII sexual discrimination case where the evidence was relevant to, among other things, the employee's "mental state for which he seeks damages from [his current employer] and the fact that he did not reveal these prior lawsuits to the psychologist who examined him for the current suit." *Gastineau*, 137 F.3d at 495-96.

Courts are generally unwilling to admit evidence offered purely to establish litigiousness and do only where the proponent can show that those previous lawsuits are baseless. *See McDonough v. City of Quincy*, 452 F.3d 8, 20 (1st Cir. 2006) ("[O]rdinarily proof that the plaintiff filed prior similar lawsuits is admissible *to show the plaintiff's litigiousness* only if there is also evidence that the prior lawsuits were fraudulently filed." (emphasis added)). In *Outley v. City of New York*, too, the evidence of prior suits was offered for the purpose of demonstrating a character trait of litigiousness, and, although the City argued the evidence also established bias, the court was dubious. 837 F.2d 587, 593-94 (2nd Cir. 1988) ("[T]he City argues that it introduced the evidence to show that Outley bears a grudge against white police officers and that he acted consistently with that grudge in filing the claims in issue. This strikes us as precisely the sort of use prohibited by

8

Rule 404(b), as going to character rather than bias."). Plaintiff also cites *Batiste-Davis v. Lincare, Inc.*, but that case explicitly adopted the same standard used by this court: "Evidence of a prior lawsuit may be admitted on a case-by-case basis if it meets the four requirements of this circuit's test." 526 F.3d 377, 380 (8th Cir. 2008).

Defendants' counsel has argued that evidence of Plaintiff's former and current lawsuits serves a legitimate purpose in this case, unrelated to Plaintiff's litigiousness: rebutting Plaintiff's testimony that he enjoyed a cordial relationship with police prior to the incident at issue, and that his anxiety and distress regarding police was the result of this encounter alone. (Trial Tr. at 501-02.) This court recognized this legitimate purpose in its instructions to the jury that the jurors could "consider [Plaintiff's prior lawsuits] only in deciding whether Larry Nelson's testimony concerning his damages is truthful in whole, in part or not at all." (*Id.* at 596.) Because evidence of Plaintiff's prior lawsuits went to whether or not these Defendants and this incident were the source of Plaintiff's injuries, this evidence served a legitimate purpose in this case. The other lawsuits were also "similar enough and close enough in time to be relevant to the current suit," *Gastineau*, 137 F.3d at 496, because Defense counsel questioned Nelson about another § 1983 action for false arrest currently pending in federal court. (Trial Tr. at 221; *Nelson v. Unknown Unnamed Officers of the Chi. Police Dep't*, No. 1:09-cv-05357 (N.D. Ill. Aug. 29, 2009) (Bucklo, J.).) Further, as in *Gastineau*, a jury could reasonably find that the prior events occurred, because the evidence of prior lawsuits in the pleadings and by testimony were "certainly adequate for this purpose." *Gastineau*, 137 F.3d at 496.

In any event, any prejudice resulting from this testimony was minimal. The court allowed introduction of the evidence only after Plaintiff "opened the door" by testifying regarding the emotional distress he experienced as a result of this incident and his previous cordial relations with police. (*Id.* at 217-20.) The matter was mentioned only briefly, and Plaintiff was permitted to testify

9

that he prevailed in at least one of those earlier suits. (*Id.* at 221-22, 250.) The court concludes that it did not abuse its discretion in overruling Plaintiff's objection to this testimony.

### 3. Prior Arrests

Plaintiff next argues that the court erred in admitting evidence of his prior arrests. A party's prior arrests that do not result in a conviction are indeed "classic candidates for exclusion," but arrests are not automatically excluded. *Anderson v. City of Chicago*, No.09 C 2311, 2010 WL 4928875, 1 (N.D. Ill. Nov. 30, 2010). In this case, Plaintiff himself opened the door to this testimony by introducing evidence of his political involvement, his previous interactions with police (including organizing meetings at the police station), his involvement with the Chicago Community Alternative Policing program, and his directing community members to the Independent Police Review Authority while he was employed by Alderman Chandler (Trial Tr. at 185-86), all of which the court concludes were efforts to establish Nelson's character for truthful and law-abiding citizenship. "'The price a [party] must pay for attempting to prove his good name is to throw open the entire subject which the law has kept closed for his benefit and to make himself vulnerable where the law otherwise shields him.'" *United States v. Jordan*, 722 F.2d 353, 358 (7th Cir. 1983) (quoting *Michelson v. United States*, 335 U.S. 469 (1948)). The court may resolve this issue differently at the second trial in this case, but concludes the admission of arrests alone would not support Plaintiff's new trial motion.

### 4. Vehicle Registration

Plaintiff argues that it was prejudicial error for the jury to hear Margarita Galindo, an investigator with the Independent Police Review Authority, testify concerning an entry in the Portable Data Terminal Messages Log generated by the computer in Defendant Ruzak's car. Galindo testified that the log showed that Plaintiff's vehicle registration was suspended as of September 2007. (Trial Tr. 315-16.) This was not in fact true; as Plaintiff's attorneys were able to demonstrate, records show that Nelson's license and registration were valid at the time of the

arrest, and the jury was explicitly so instructed: "There is no evidence in this case that Mr. Nelson's license or registration was expired, and the records you were shown, in fact, demonstrate that Mr. Nelson's license and registration were valid as of the date of the incident." (*Id.* at 595-96.) A jury is presumed to follow the court's instructions "absent an overwhelming probability that the jury will be unable to disregard inadmissible evidence and a strong likelihood of a devastating effect from the evidence." *Turner v. Miller*, 301 F.3d 599, 604 (7th Cir. 2002). Defendants' apparent failure to review the records is disappointing, but the court is satisfied that the instruction it gave the jurors eliminated any error. The motion for a new trial on this basis is denied.

**C.     Weight of the Evidence**

Plaintiff also argues that he is entitled to a new trial because the jury returned a verdict that was against the manifest weight of the evidence. In order to merit a new trial on these grounds, Plaintiff would have to demonstrate that no rational jury could have rendered a verdict against him. *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 926 (7th Cir. 2004). In general, a court "[w]ill not set aside a jury verdict if a reasonable basis exists in the record to support the verdict, viewing the evidence in the light most favorable to the prevailing party, and leaving issues of credibility and weight of the evidence to the jury." *Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004).[3]

---

[3]     There has been some confusion in this circuit over the amount of deference courts must give to juries when assessing whether the verdict is against the manifest weight of the evidence. *See Robinson v. McNeil Consumer Healthcare*, 671 F. Supp.2d 975, 989 n.4 (N.D. Ill. 2009). Most recently, however, the Seventh Circuit emphasized that in ruling on a motion for a new trial, the district court has discretion to assess "the credibility of the witnesses and the comparative strength of the facts put forth at trial." *Mejia v. Cook County*, No. 09-3540, ___ F.3d ___, 2011 WL 1518878 (7th Cir. Apr. 22, 2011). Deference to the jury's determinations remains appropriate, *id.* *3 n.1, and the degree of deference owed to the jury's determinations depends on the issues the jurors were asked to decide. *See Latino v. Kaizer*, 58 F.3d 310, 314 (7th Cir. 1995). "In cases involving simple issues but highly disputed facts . . . greater deference should be afforded the jury's verdict than in cases involving complex issues with facts not highly disputed." *Id.*; *see also Williamson v. Consolidated Rail Corp.*, 926 F.2d 1344, 1352 (3rd Cir. 1991) ("Where the subject matter of the litigation is simple and within a layman's understanding, the district court is given less
(continued...)

In his argument for a new trial on this basis, Plaintiff relies on Defendants' admission that they had no present recollection of the circumstances surrounding Plaintiff's arrest. This admission required the jury to find in Plaintiff's favor, he argues, because his own testimony about what happened on February 11 stands unrebutted. Plaintiff here argues that the court misapplied the burden of proof in its jury instructions and in ruling on Defendants' objections during Plaintiff's closing statement. Specifically, Plaintiff complains, the court misled the jury when, in response to Defendants' objections to certain comments in Plaintiff's closing, the court explained that "the Defendants have no obligation to present any evidence. The Plaintiff has the burden of proof." (Trial Tr. at 661-63.)[4]

The court does not agree that Defendants' memory lapse requires a verdict in favor of Plaintiff in this case. At trial, "a § 1983 plaintiff assumes the burden of showing that arrest was illegal—i.e., without probable cause–and that the arresting officer had no reasonable good faith belief in its legality." *Witley v. Seibel II*, 676 F.2d 245, 248 (7th Cir. 1982), cited in *Guenther v. Holmgren*, 738 F.2d 879, 888 (7th Cir. 1984); *see also McBride v. Grice*, 576 F.3d 703, 706 (7th Cir. 2009) ("In this circuit the allocation of the burden of persuasion in a § 1983 case claiming a Fourth Amendment violation is clear: a plaintiff claiming that he was arrested without probable cause carries the burden of establishing the absence of probable cause.").[5]

---

[3](...continued)
freedom to scrutinize the jury's verdict than in a case that deals with complex factual determinations . . . ."). Here, the jury's determination turned almost entirely upon the credibility of Plaintiff's testimony concerning his very straightforward claims. The court believes substantial deference is appropriate here.

[4]     Interruption of a party in the course of closing argument is always to be avoided. The court is nevertheless comfortable that its comments in response to Defendants' objections were proper, and expects this problem will not recur in a second trial.

[5]     Plaintiff cites two Ninth Circuit cases for the proposition that a defendant bears a burden of production, which shifts the burden to defendants "to provide some evidence that the arresting officers had probable cause for a warrantless search" once a plaintiff makes a prima facie
(continued...)

The jurors in this case were instructed that they were responsible to determine which witnesses they believed, which they did not believe, and how much of any witness's testimony they chose to accept or reject. (Trial Tr. at 595-96.) If the jurors rejected some portions of Plaintiff's own testimony, they could reasonably have concluded that he did not meet his burden of proof. "'It is the prerogative of a jury or other trier of fact to disbelieve uncontradicted testimony unless other evidence shows that the testimony must be true.'" *Emmel v. Coca-Cola Bottling Co.*, 95 F.3d 627, 633-44 (7th Cir. 1996) (quoting *EEOC v. G-K-G, Inc.*, 39 F.3d 740, 746 (7th Cir. 1994)). The jurors were, of course, entitled to accept Plaintiff's version of events, and were free, as well, to draw an adverse inference against Defendants based upon their silence. No evidence in this case, however, required the jurors to accept all of Plaintiff's testimony. The court rejects Plaintiff's argument that the only rational verdict in this case was in his favor.

## II. Motion to Set Aside Judgment Pursuant to Rule 60

Plaintiff next moves to set aside the judgment pursuant to FED. R. CIV. P. Rules 60(b)(3) and 60(d)(3). Generally speaking, "'relief from a judgment under Rule 60(b) is an extraordinary remedy and is granted only in exceptional circumstances.'" *Bakery Mach. & Fabrication, Inc. v. Traditional Baking, Inc.*, 570 F.3d 845, 848 (7th Cir. 2009) (quoting *Reinsurance Co. of America, Inc. v. Administratia Asigurarilor de Stat*, 902 F.2d 1275, 1277 (7th Cir. 1990)). Rule 60(b)(3) specifically authorizes relief from judgment where the prevailing party is guilty of fraud, misrepresentation, or

---

[5](...continued)
case "simply by showing that the arrest was conducted without a valid warrant." *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 965 (9th Cir. 2001); *see also Watson v. City of Huntington Beach*, No. 06-55235, 2007 WL 4142976, at *1 (9th Cir. 2007). This court does not find and Plaintiff does not cite any support for such burden-shifting in false arrest cases in this circuit, however. *See Der v. Connolly*, No. 08-CV-6409 (PSG/JJG), 2011 WL 31498, at *2 & n.2 (D. Minn. Jan. 5, 2011) (discussing the circuit split concerning the burden of proof in warrantless search or arrest cases). The court declines Plaintiff's invitation to adopt the Ninth Circuit's burden-shifting approach.

misconduct. FED. R. CIV. P. 60. Plaintiff also invokes Rule 60(d)(3), which emphasizes the court's power to set aside a judgment procured by fraud. FED. R. CIV. P. 60(d) (3).

Plaintiff believes the test is met here, in light of the testimony of Margarita Galindo concerning the status of his license. For Defendants to introduce this evidence at all was improper, Plaintiff argues, for three reasons: (1) each of the Defendants had testified that the Messages Log did not contain data indicating that there was probable cause; (2) Defendants made admissions in response to Plaintiff's requests to admit that "[n]o information obtained by Chicago police officers as a result of the inquiries of Larry Nelson's name on computer databases on February 11, 2008, gave the officers any probable cause to arrest him,"; and (3) a later entry in the Messages Log shows that Plaintiff's registration was indeed valid on the date of the incident. As noted, Plaintiff was able during the course of the trial to investigate the matter and rebut Galindo's testimony.

The court agrees that defense counsel's presentation of this evidence was disappointing. Moreover, the court recognizes that the law does not require Plaintiff to establish that the result of the trial would have been different had the alleged fraud not taken place. *Lonsdorf v. Seefeldt*, 47 F.3d 893, 897 (7th Cir. 1995). The law does, however, require Plaintiff to establish that he was prevented from "fully and fairly presenting" a meritorious claim at trial as a result of Defendants' fraud, misrepresentation, or misconduct. *Wickens v. Shell Oil Co.*, 620 F.3d 747, 758-59 (7th Cir. 2010). That test is not met here, where the truth concerning Plaintiff's license status was uncovered prior to the jury's deliberations, and the court gave the jury a firm instruction on the issue. (Trial Tr. at 595, 596.) A new trial will render appropriate relief, and the court declines to enter judgment in Plaintiff's favor as a matter of law.

## **CONCLUSION**

Plaintiff's Motion for a New Trial [124, 146] is granted. Plaintiff's Motion to Set Aside Judgment UNDER FED. R. CIV. P. 60(b)(3) and 60(d)(3) and Motion for Sanctions [148] is denied.

ENTER:

Dated: September 27, 2011          _____
                                   REBECCA R. PALLMEYER
                                   United States District Judge