# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LARRY G. NELSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 09 C 883 |
| ) | |
| RONALD LIS, ELIZABETH WILSON, ) | Judge Rebecca R. Pallmeyer |
| RICHARD NOVOTNY, BRADLEY RUZAK, ) | |
| and CITY OF CHICAGO, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Larry Nelson, a Chicago resident and one-time candidate for a local political office, was driving home from a campaign-related meeting on February 11, 2008 when he was stopped by four Chicago police officers in two squad cars. According to Nelson, one officer pulled a gun out and pointed it at Nelson, and another pulled Nelson out of the car and handcuffed him. After the officers ran Nelson's plates and name, they found the car was properly registered to him and he had no warrants out for his arrest. Having found no reason to hold Nelson, the officers released him. He filed suit a year later against the officers and the City of Chicago under 42 U.S.C § 1983 for violations of his constitutional right to be free from unreasonable seizure, as well as state-law theories of relief. A jury returned a verdict for Defendants, but the Seventh Circuit reversed, citing evidentiary errors. On remand, Defendants made an offer of judgment in the amount of $40,000, which Nelson accepted. What remains is a dispute about attorneys' fees. The Defendants agree that Nelson is entitled to an award of fees, but have objected to the claimed hourly rates and number of hours billed by Plaintiff's attorneys. As explained here, the objections are sustained in part and overruled in part.

## BACKGROUND

As noted, the parties agreed that Plaintiff's acceptance of the offer of judgment makes him a "prevailing party" for purpose of a fee award. In determining the appropriate fee award,

the court begins by calculating the "lodestar," that is, the number of hours reasonably expended on the case, multiplied by the reasonable hourly rate for the attorney who spent them. *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014) (*citing Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011)).

"A reasonable hourly rate is based on the local market rate for the attorney's services." *Id.* (citing *Pickett*, 664 F.3d at 640). The reasonable hourly rate for an attorney is the market rate for her services. *See Fogle v. William Chevrolet/Geo, Inc.*, 275 F.3d 613, 615 (7th Cir. 2001). "[A]n attorney's market rate includes evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases." *Spegon v. Catholic Bishop of Chic.*, 175 F.3d 544, 555 (7th Cir. 1999) (citations omitted). The Seventh Circuit has explained that an attorney's actual billing rate is presumptively the best measure of the market rate for her services. *See People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996) (citing *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993)). An attorney seeking fees has the burden of proving her market rate, but once she does, opposing counsel bears the burden of showing why the hourly rate should be lower. *Spegon*, 175 F.3d at 554–55.

In civil rights cases, where plaintiffs' attorneys are primarily compensated through fee awards and in settlements, there is rarely a market rate to reference other than the rates of "similarly experienced attorneys in the community and evidence of rates set for the attorney in similar cases." *See id.* The court considers such evidence, but is free to discount the probative value of rates that the attorney has secured as a result of compromise rather than judicial decision. *Id.* at 554. If the fee applicant fails to produce sufficient evidence to establish a rate, the court may make its own determination of a reasonable rate. *Pickett*, 664 F.3d at 640 (citing *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 409 (7th Cir. 1999)).

Plaintiff seeks compensation for the work of his three attorneys. For Irene Dymkar, lead counsel, he seeks an award at a billing rate of $495.00 per hour for 643.1 hours of work. James

Bowers, Ms. Dymkar's co-counsel, claims a rate of $495.00 per hour as well, for 115.3 hours. For Shamoyita DasGupta, Ms. Dymkar's associate, Nelson seeks $230.00 per hour for 4.4 hours of work. Plaintiff also seeks $125.00 per hour for the work of four paralegals who performed a total of 131 hours of work. Defendants challenge the claimed billing rates, as well as the claimed number of hours worked. The court addresses the hourly rates first, then turns to the number of hours worked.

## ANALYSIS

**I.      Rates**

    **A.      Counsel's Experience**

Irene Dymkar, Plaintiff's primary trial and appellate counsel, has been practicing law for 39 years. (Decl. of Irene Dymkar, Ex. G. to Pl's Br. [238-7], at ¶ 1.) Since opening her own practice in 2006, Ms. Dymkar has focused almost exclusively on representing plaintiffs in civil rights cases like this one. (*Id.* ¶ 12.) She has handled more than 100 civil rights cases since 2003 (*see id.* ¶ 13), and has substantial trial and appellate experience. She began her career as an Assistant District Attorney in Monroe County, New York, where she tried 25 felony cases to a jury, 75 misdemeanor cases to the bench or to a jury (*id.* ¶ 6), and defended 30 appeals in New York courts. (*Id.* ¶ 8.) She then opened a private practice in New York, in which she provided criminal defense and represented plaintiffs in civil litigation, participating in "30–40 criminal jury trials and in 10–15 civil jury trials." (*Id.* ¶¶ 9–10.) Ms. Dymkar moved to Chicago in 2003 and has conducted her own practice since 2006. (*Id.* ¶ 12.) She reports that she has won six of her last nine trials, settled two of the other three after hung juries, and is appealing from a loss in the remaining case. (*Id.* ¶ 13.) Ms. Dymkar requests a rate of $495 per hour, for 643.1 hours, for a total of $318,334.50.

James Bowers, Ms. Dymkar's co-counsel at trial, has also been practicing law for 39 years with varied experience. (Aff. of James L. Bowers, Ex. K to Pl.'s Br. [238-11], at ¶ 1.) Mr. Bowers began his career as counsel to a freight-forwarding firm for two years, and then

3

prosecuted violations of the Occupational Health and Safety Act in administrative hearings for five years. (*Id.* ¶¶ 4–5.) From 1984 until now, he has represented plaintiffs in medical malpractice, products liability, and personal injury cases, first with a small law firm (*id.* ¶ 6), later as principal of his own firm (*id.* ¶ 7), and, since 1999, as a solo practitioner. (*Id.* ¶ 8.) In his solo practice, he has added civil rights cases to his focus and, together with Ms. Dymkar and with another attorney, James Fennerty, he has tried eleven § 1983 cases to verdict since 2006. (*Id.* ¶ 9). Mr. Bowers also claims a rate of $495, for 115.3 hours on the case, for a total of $57,073.50.

Attorney Shamoyita DasGupta has worked with Ms. Dymkar and one other attorney since being admitted to practice in November 2015. (Decl. of Shamoyita DasGupta, Ex. M to Pl. Br [238-13], at ¶ 1, 4.) Ms. DasGupta does not yet have trial experience, but has worked on more than twenty federal civil rights cases and more than a dozen criminal cases in state and federal courts. (*Id.* ¶¶ 5–6.) Plaintiff requests a rate of $230 per hour for 4.4 hours of her work[1] on the case, for a total of $1,012.00.

Finally, four paralegals—Sarah Brandt, Chantelle Hill, Amy Kaliski, and Daniel Regenscheit—collectively dedicated 131 hours to the case at a claimed hourly rate of $125, for a total of $16,412.50.

### B. Billing Rates of Other Attorneys / Other Fee Awards

In support of the rates claimed by his attorneys, Plaintiff has submitted the affidavits of three other attorneys who represent plaintiffs in civil rights litigation in Chicago: Torreya Hamilton, Jeffrey Neslund, and Janine Hoft. Ms. Hamilton is, like Ms. Dymkar, a sole proprietor with her own civil rights practice that she has operated since 2006. (Aff. of Torreya Hamilton [hereinafter "Hamilton Aff."], Ex. H to Pl.'s Br. [238-8], at ¶ 5.) In her 12 years of practice experience, Ms. Hamilton has handled 198 civil rights cases in state and federal court. (*See id.*

---

[1] Plaintiff's brief requests 5.8 hours for Ms. DasGupta (Pl.'s Br. 9), but her timesheet supports 4.4 hours. (Ex. E to Pl.'s Br. [238-5].)

4

¶ 6.) Ms. Hamilton who, like Ms. Dymkar, began her practice as a state prosecutor (*id.* ¶ 3), then worked briefly for the City of Chicago Corporation Counsel, defending the City in § 1983 lawsuits. (*Id.* ¶ 4.) Ms. Hamilton asserts that her own current hourly rate is $465.00. Judge Leinenweber of this district awarded $450.00 per hour for Ms. Hamilton's work in a civil rights case tried in 2014. *Baker v. Ghidotti*, No. 11 C 4197, 2015 WL 1888004, at *4 (N.D. Ill. Apr. 24, 2015). Ms. Hamilton works frequently with Ms. Dymkar and believes Ms. Dymkar's requested rate is reasonable. (Hamilton Aff. ¶ 11.)

Jeffrey Neslund has been practicing in personal injury, civil rights, and criminal defense since late 2004. (Aff. of Jeffrey Neslund, Ex. I to Pl.'s Br. [238-9], at 2.) Before opening this practice, Mr. Neslund worked as Cook County state's attorney for nearly ten years. (*See id.* at 1.) In his current practice, Mr. Neslund has tried at least four cases to a verdict, and negotiated several seven-figure settlements, including the suit brought by the estate of Laquan McDonald against the City of Chicago. (*Id.* at 2–3.) In 2014, Judge Marovich of this court awarded fees for Mr. Neslund's work at the rate of $425 per hour. *See Grayer v. Cerda*, No. 12-cv-2665, slip op. at 25 [69] (N.D. Ill. Oct. 6, 2014). Mr. Neslund, too, has worked with Ms. Dymkar and believes the rate she has requested is reasonable. (Neslund Aff. at 4.)

Finally, Plaintiff has submitted an affidavit from Janine Hoft, an attorney with the People's Law Office since 1985. (Decl. of Janine L. H. Hoft, Ex. J to Pl.'s Br. [hereinafter "Hoft Decl."] [238-10], at ¶ 2.) Based on her own experience, Ms. Hoft also believes Ms. Dymkar's claimed hourly rate is reasonable. (*Id.* ¶ 9.) She notes in particular the rates awarded to her colleagues for litigation as early as January 2009:

- $325 per hour for Joey Mogul (a 1997 law graduate)
- $400 per hour for John Stainthorp (a 1979 law graduate)
- $525 per hour for Flint Taylor (a 1972 law graduate)

*See Delgado v. Mak*, No. 06 C 3757, 2009 WL 211862 at *3 (N.D. Ill. Jan. 29, 2009). The court notes that these hourly rates were not contested by the defendants, 2009 WL 211862 at *1, but "a previous attorneys' fee award is useful for establishing a reasonable market rate for similar

5

work whether it is disputed or not." *Jeffboat, LLC, v. Dir., Office of Workers' Comp. Programs,* 553 F.3d 487, 491 (7th Cir.2009).

Defendants complain that this evidence is suspect because the affiants are currently working on cases with Ms. Dymkar. (Defs.' Resp. 6.) The court does not share the suspicion that these accomplished attorneys would misrepresent their own qualifications. Evidence of what these attorneys charge for similar services is of greater evidentiary value than their opinions concerning Ms. Dymkar's appropriate hourly rate, *see Pickett*, 664 F.3d at 647, but those opinions do provide some guidance.

Plaintiff has also offered evidence of two cases in which his attorneys have been awarded fees at substantial hourly rates. In *Nelson v. Salgado*, Judge Bucklo awarded fees at $425.00 per hour for work Ms. Dymkar performed as early as 2010. No. 09-CV-05357, slip op. at 4 [143] (N.D. Ill. Dec. 20, 2012). Some three years later, Judge Leinenweber set Ms. Dymkar's rate again at $425, *Baker v. Ghidotti*, No. 11 C 4197, 2015 WL 1888004, at *3 (N.D. Ill. Apr. 24, 2015), noting that Judge Kendall had adopted a $330 rate for Ms. Dymkar, proposed by Judge Schenkier, in 2012. *See Ragland v. Ortiz,* No. 08 C 6157, 2012 WL 4060310, at *3 (N.D. Ill. Sept. 14, 2012). Mr. Bowers also appeared in *Ragland* and received a $310 rate. *Id.* Ms. Dymkar's appeal from the fee ruling in *Baker* is pending. Finally, the court notes that Ms. Dymkar has recovered $495 per hour for her work in other cases by way of settlement. *See* Local Rule 54.3(e) Joint Statement at 1 [359], *Armstrong v. Maloney* (N.D. Ill. Mar. 14, 2013) (No. 08-cv-4398) (requesting $455,507.00 through date of trial); Stip. of Att'ys Fees & Costs at 2 [442], *Armstrong v. Maloney* (N.D. Ill. Nov. 26, 2014) (No. 08-cv-4398) (granting $473,000 in attorneys' fees).) A rate determined by settlement has less weight than the attorney's market rate, *Montanez*, 755 F.3d at 554, but is worthy of some consideration. Ms. Dymkar also cites *Hadnott v. Kelly*, No. 07-cv-06754 (N.D. Ill. Nov. 12, 2015), in which she reportedly negotiated a settlement of her fees at $495 per hour rate.

Evidence of Mr. Bowers's appropriate hourly rate is a bit thinner; he has offered copies of two retainer agreements with businesses in which his agreed rate is $495 an hour. (Ex. L to Pl.'s Br. [238-12].) The Seventh Circuit has admonished that the "best evidence of the market rate is the amount the attorney actually bills for similar work . . . ." *Montanez*, 755 F.3d at 553, but Mr. Bowers's work on "business matters" may have little relevance to civil rights litigation, and Plaintiff did not produce evidence of work actually performed or collected under those agreements.

Finally, Plaintiff refers the court to fee awards made to attorneys in unrelated cases. In *Carr v. Tillery*, an attorney with twenty-two years of experience was initially awarded fees at the rate of $645 per hour, *see* No. 07-314-DRH, 2010 WL 1416007 (S.D. Ill. Mar. 31, 2010), but that award was later reduced to $440 per hour. *Carr v. Tillery*, No. 07-314-DRH, 2010 WL 1963398, at *7 (S.D. Ill. May 17, 2010). An attorney with twelve years' experience recovered fees at the rate of $560 per hour in a sanctions order, but this was based on the law firm's actual billing rate, *Neuros Co. v. KTurbo Inc.*, No. 08-CV-5939, 2010 WL 547599, at *1 (N.D. Ill. Feb. 9, 2010), to which the opposing party did not object. *Id.* at *2. *See also Entm't Software Ass'n v. Blagojevich*, No. 05 C 4265, 2006 WL 3694851, at *3 (N.D. Ill. Aug. 9, 2006) (approving rates of $565 and $495 per hour for Jenner & Block partners in light of evidence that "Jenner & Block normally charges clients at the above rates and plaintiffs actually paid counsel at these rates"). Plaintiff also references a fee of $465 per hour for partners awarded in a Truth in Lending Act case; the court noted the attorneys' substantial experience in that area of litigation, and relied on evidence of earlier awards, adjusted upwards for inflation. *Jones v. Ameriquest Mortg. Co.*, No. 05 CV 432, 2009 WL 631617, at *4 (N.D. Ill. Mar. 10, 2009).

### C. The Court's Rate Determinations

The court finds that $465 per hour is a reasonable rate for Ms. Dymkar. Ms. Dymkar has extensive experience in civil rights litigation, jury trials, and appeals in a thirty-nine-year career.

Ms. Hamilton, the closest comparator to Ms. Dymkar in experience, received a $450 rate in 2015, and Ms. Dymkar's more substantial experience supports a higher rate.

The court awards fees for Mr. Bowers's time at the rate of $375 per hour. Though Mr. Bowers has significant experience in other areas of law, the evidence presented on his track record in civil litigation, particularly in civil rights litigation, is not as developed as Ms. Dymkar's. His most recent adjudicated rate, $310 per hour in *Ragland v. Ortiz,* No. 08 C 6157, 2012 WL 4060310 (N.D. Ill. Sept. 14, 2012), does not reflect his more recent trial experience. That additional experience is not directly comparable to that of the affiants, or Ms. Dymkar herself, but does justify an increase to $375.

Ms. Gupta will receive her requested rate of $230 per hour. The Laffey Matrix, a tool developed by the Department of Justice to advise courts on the market rates of attorneys practicing civil law in the Washington, DC metropolitan area, suggests a substantially higher rate of $284 per hour for an attorney with less than two years' experience. (USAO Atty's Fees Matrix 2015 – 2016, Ex. N to Pl.'s Br. [238-14], at 1); *see also Pickett*, 664 F.3d at 648 (Laffey Matrix may assist district courts in determining an appropriate hourly rate). The matrix is an imprecise gauge of appropriate rates, however, *Pickett*, 664 F.3d at 650, and the rate resulting from the matrix appears too high for an attorney with limited experience; the court finds that $230 is appropriate.

Defendants claim that Ms. Gupta should not be compensated at all for time on the case because she did not file an appearance until after the judgment was entered, but the case they cite merely stands for the proposition that an attorney who is a party to the case ordinarily does not recover fees for his time. *Maloney v. Washington,* No. 84 C 689, 1989 WL 15973, at *1 (N.D. Ill. Feb. 21, 1989). An appearance is an administrative necessity, not a hard and fast rule limiting the number of lawyers who can perform compensable work on a case. *Khoury v. Cook Assocs., Inc.*, No. 94 C 3121, 1997 WL 567796, at *3 (N.D. Ill. Sept. 4, 1997).

Finally, the court concludes that paralegals and clerks should be compensated at $125 an hour, consistent with other recent fee awards. *See World Outreach Conference Ctr. v. City of Chicago*, No. 06 C 2891, 2017 WL 587265, at *5 (N.D. Ill. Feb. 14, 2017) (citing *Koncor v. Esser, James & Assocs., LLC*, No. 16 C 5574, 2016 WL 6822666, at *2 (N.D. Ill. Nov. 18, 2016); *In re Sears, Roebuck & Co. Front-loading Washer Products Liability Litig.*, No. 06 C 7023, 2016 WL 4765679, at *18 (N.D. Ill. Sept. 13, 2016)); *cf. Washington v. Office of the State Appellate Defender*, No. 12 CV 8533, 2016 WL 5233563, at *7 (N.D. Ill. Sept. 22, 2016) (awarding $100 per hour for time that could be performed by a paralegal).

Defendants argue that the time should be computed at the rate that the attorney in question was charging at the time the work was performed—that is, the court should award fees at counsel's 2011 rate for work performed in 2011. A court may compensate for the delay in payment that is inherent in the § 1988 fee-shifting scheme by either (1) awarding fees based on the attorney's current rates at the time of the petition, or (2) awarding fees based on the attorneys' historical rates at the time the services were rendered and adding prejudgment interest on that amount. *Pickett*, 813 F.3d at 647 (citing *Smith v. Village of Maywood*, 17 F.3d 219, 221 (7th Cir. 1994)). This court will use the current rate and declines to award prejudgment interest. *See, e.g., Duran v. Town of Cicero*, 01 C 6858, 2012 WL 1279903, at *16 (N.D. Ill. Apr. 16, 2012) (awarding prejudgment interest where "current rates" in fee petition were four years old).

## II.   Number of Hours

Defendants also argue that the number of hours claimed by Plaintiff's counsel should be reduced. "In determining the reasonable number of hours, the court should exclude hours that are 'excessive, redundant or otherwise unnecessary.'" *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 708 (7th Cir. 2001) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). In making this determination, the court is not permitted to simply "eyeball" the fee request and cut it down by an arbitrary percentage. *People Who Care v. Rockford Bd. of Educ.*,

*Sch. Dist. No. 205*, 90 F.3d 1307, 1314 (7th Cir. 1996). Defendants effectively argue for such a reduction, urging an across-the-board 50% cut to the hours because, in Defendants' view, Ms. Dymkar and her team spent too much time on legal research, client conferences, internal conferences, and in discussions with opposing counsel. Plaintiff, for his part, contends that Defendants Defendants should be precluded from challenging the number of hours his attorneys devoted to this case, as Defendants' attorneys are unable to produce their time records as contemplated by Local Rule 54.3(d)(5). (Pl.'s Reply Br. 9.)

Defense counsel do not always maintain hourly billing records and are therefore not always able to comply with Local Rule 54.3(d)(5). Barring any objection to Plaintiff's claimed hours is an inappropriate sanction, but Defendants' vague assertions that Plaintiff has overbilled have much less credibility than they might with appropriate comparison data.

Having reviewed her billing records, the court finds Ms. Dymkar's time on legal research to be reasonable. Evidentiary, procedural, and jury instructions issues in this case were hotly contested, and there was a substantial appeal. Effective representation in cases such as this require significant legal research, and Defendants offer no suggestion about what a reasonable number of hours might have been. So, too, Plaintiff's requests for time expended on motions *in limine*, drafting other briefs in the case, and the drafting of appellate briefs; none of Plaintiff's requests appear to be unreasonable for these activities. Defendants have identified no reason to discount the hours other than a general assertion that the case was insignificant in light of the short time that Plaintiff spent in police custody. (Defs.' Resp. 20 ("The entire incident in this case lasted less than thirty minutes."); *id.* at 19 (". . . a disputed incident that lasted a few minutes.").) The comparatively short time Plaintiff spent in custody is relevant to his damages, but not necessarily to the difficulty or complication of proving that his rights were violated. Defendants have elected to settle a constitutional violation case that calls for fee-shifting; they cannot now claim the violation was not severe enough to merit an award.

Defendants also raise other specific objections, as well. They note that Plaintiff's counsel spent more than fifty hours in conferences with the client over the course of the case—too much client contact, in Defendants' view, given the complexity of the case. As Plaintiff points out, however, this averages to just half an hour per month. (Pl.'s Reply Br. 27.) The court is not prepared to strike a different balance between the need to maintain contact with the client and the obligation to devote only necessary time to the litigation. Plaintiff has also adequately explained why some calls were made by paralegals and some by attorneys; logically, some client contact can be undertaken by nonattorneys, but those matters that implicate substantive legal questions require personal communication with attorneys.

Defendants also assert that 11.7 hours of time spent between Mr. Bowers and Ms. Dymkar in internal conferences was excessive. Reasonable time spent in internal conferences between two or more attorneys is compensable. *Gautreaux v. Chicago Hous. Auth.*, 491 F.3d 649, 661 (7th Cir. 2007). Mr. Bowers had to be brought up to speed in preparation for trial, and counsel tried the case as a team. The court does not find 11.7 hours of internal discussions to be unreasonable to accomplish that task.

Ms. Dymkar also spent more than 25 hours in communications with Defendant's counsel, and Defendants argue that the time entries for this activity are too vague to be compensated. Presumably, opposing counsel knows what she was calling about. Where defense counsel was a party to the time expenditure, Defendants should be able to raise their objections with specificity and identify which calls were unnecessary or excessively time-wasting. Defendants have raised no specific objections, and this time will not be reduced.

Defendants argue that Ms. Dymkar performed a substantial amount of work that could have been completed by a paralegal. With respect to this objection, Defendants have identified 29.8 hours that they believe reflect non-attorney work. (Ex. 17 to Def.'s Resp. [241-17].) As reflected in the attached appendix, the court sustains these objections in part and will reduce compensation for 5.7 hours of time to the paralegal rate. The court is satisfied that the

11

remainder of the activities, such as preparing disclosures, reviewing redactions, drafting FOIAs, and communicating with chambers staff, should be compensated at an attorney rate. Defendants' argument that paralegals were performing tasks of equal complexity to those performed by Ms. Dymkar is not supported by the time records. A paralegal can draft certain letters or handle certain phone conferences, but it does not follow that all letter drafting and phone conferences must be compensated at the paralegal rate.

Defendants also request that certain tasks completed by Ms. DasGupta be stricken as purely clerical, specifically picking up a check and sending a fax to Plaintiff. Tasks that are "essentially 'clerical' or secretarial" should be disallowed. *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999). The court agrees that both of these tasks did not require attorney or paralegal skills, and will not be compensated.

Finally, Plaintiff requests that his attorneys be compensated for work performed after the offer of judgment; primarily, briefing this fee petition. The offer of judgment expressly disclaims attorneys' fees after the offer of judgment was tendered on May 16, 2016. (Offer of J. [221-1], at ¶ 1.) Accepted offers of judgment are interpreted according to traditional contract principles. *Webb v. James*, 147 F.3d 617, 620 (7th Cir. 1998). The unavoidable intent of the parties in this case was to limit fees to those preceding the date identified in the offer. Plaintiff argues, however, that Defendants protracted the negotiations over fees by unreasonably refusing to establish an hourly rate for her. Defendants point the finger the other way, arguing that Plaintiff should have accepted the lump sum they offered in negotiations that preceded the preparation of Plaintiff's fee petition.

It may be appropriate to award fees for time spent after acceptance of an offer of judgment, where defendant presses "arbitrary, improper challenges." *Morjal v. City of Chicago*, 774 F.3d 419, 423 (7th Cir. 2014). In *Morjal*, the Seventh Circuit upheld the district court's award of $2,000 in post-judgment fees to a plaintiff where the defense counsel had delayed the fee determination with frivolous arguments. *Id.* Here, while the court has overruled many of

12

defense counsel's challenges, but it has sustained others, the court does not find Defendants' overall position frivolous. The court does not comment on the wisdom of the City's unwillingness to agree to an hourly rate for repeat players in the plaintiffs' bar. The court merely declines to conclude that this practice, in itself, is improper as long as defense counsel raise legitimate arguments. Therefore, the following hours billed after May 16, 2016 will not be compensated: 39 hours for Ms. Dymkar, 2.1 hours for Mr. Bowers, 2 hours for Ms. DasGupta, and 11.3 hours for paralegal services.

## **CONCLUSION**

Plaintiff's petition for attorneys' fees [238] is granted in part and denied in part. Plaintiff's counsel will be compensated at the following rates and hours:

| Irene Dymkar | 598.4 hours[2] | $465 per hour | $278,256.00 |
| --- | --- | --- | --- |
| James Bowers | 113.2 hours[3] | $375 per hour | $42,450.00 |
| Shamoyita DasGupta | 1.8 hours[4] | $230 per hour | $414.00 |
| Paralegal Services | 125.7 hours[5] | $125 per hour | $15,713.00 |

The total attorneys' fees award is $336,833.00, with no interest.

---

[2] Reduced by 39 hours for work performed after May 16, 2016, and by 5.7 hours for paralegal work.
[3] Reduced by 2.1 hours for work performed after May 16, 2016.
[4] Reduced by 2 hours for work performed after May 16, 2016, and by .5 hours for a clerical task.
[5] Reduced by 11.3 hours for work performed after May 16, 2016, and increased by 5.7 hours of work performed by Ms. Dymkar.

**APPENDIX**

    This appendix is taken verbatim from Defendants' Exhibit 17, which is Defendants' list of time entries made by Ms. Dymkar that they assert should be compensated at a paralegal rate. The entries with a strikethrough will be compensated at the paralegal rate, a total of 5.7 hours. The breaks in the table are in the original.

| | | |
|---|---|---|
| 3/18/2008 | Draft FOIA request, Ofc Emerg Mangmt and Comm | 0.4 |
| 3/18/2008 | Draft FOIA request, Chicago Police Dept. | 0.3 |
| ~~2/11/2009~~ | ~~Draft cover sheet~~ | ~~0.1~~ |
| ~~2/11/2009~~ | ~~Draft attorney appearance~~ | ~~0.1~~ |
| ~~2/11/2009~~ | ~~Draft summons~~ | ~~0.2~~ |
| ~~7/28/2009~~ | ~~Draft notice of motion~~ | ~~0.1~~ |
| ~~7/28/2009~~ | ~~Draft deposition notice~~ | ~~0.4~~ |
| ~~8/17/2009~~ | ~~Draft deposition notices (2)~~ | ~~0.4~~ |
| ~~8/24/2009~~ | ~~Draft notice of motion~~ | ~~0.1~~ |
| ~~8/31/2009~~ | ~~Draft summonses (4)~~ | ~~0.4~~ |
| ~~9/12/2009~~ | ~~Draft deposition re-notice~~ | ~~0.2~~ |
| ~~12/10/2009~~ | ~~Draft re-notice of depositions~~ | ~~0.2~~ |
| ~~12/17/2009~~ | ~~Draft notice of motion~~ | ~~0.1~~ |
| ~~12/17/2009~~ | ~~Draft notice of motion~~ | ~~0.1~~ |
| ~~12/31/2009~~ | ~~Draft re-notice of depositions~~ | ~~0.1~~ |
| 1/5/2010 | Draft FOIA request, Ofc Emerg Mangmt and Comm | 0.3 |
| ~~2/11/2010~~ | ~~Draft notice of motion~~ | ~~0.1~~ |
| 2/12/2010 | Draft e-mail to court deputy | 0.2 |
| ~~5/19/2010~~ | ~~Draft notice of motion~~ | ~~0.1~~ |
| 5/25/2010 | Draft witness list | 1.4 |
| 5/25/2010 | Draft exhibit list | 1.8 |
| 6/4/2010 | Draft e-mail to court deputy | 0.2 |
| ~~8/19/2010~~ | ~~Draft notice of motion~~ | ~~0.1~~ |
| ~~8/20/2010~~ | ~~Draft notice of motion~~ | ~~0.1~~ |
| ~~8/21/2010~~ | ~~Draft notice of motion~~ | ~~0.1~~ |
| ~~8/24/2010~~ | ~~Draft atty appearance~~ | ~~0.2~~ |
| ~~10/4/2010~~ | ~~Draft notice of motion~~ | ~~0.1~~ |
| ~~10/7/2010~~ | ~~Draft notice of motion~~ | ~~0.1~~ |
| ~~10/26/2010~~ | ~~Draft notice of motion~~ | ~~0.1~~ |
| ~~11/30/2010~~ | ~~Draft notice of motion~~ | ~~0.1~~ |
| ~~12/20/2010~~ | ~~Draft notices of motion (3)~~ | ~~0.2~~ |
| ~~1/4/2011~~ | ~~Draft notices of motion (2)~~ | ~~0.2~~ |
| ~~1/29/2011~~ | ~~Draft notice of motion~~ | ~~0.1~~ |
| ~~10/18/2012~~ | ~~Draft notice of appeal~~ | ~~0.3~~ |
| 10/18/2012 | Draft docketing statement | 0.3 |
| 10/19/2012 | Draft 7th Circuit transcript info sheet | 0.4 |
| ~~11/5/2012~~ | ~~Draft notice of motion~~ | ~~0.1~~ |
| ~~11/16/12~~ | ~~Draft e-mail to 7th Circuit~~ | ~~.1~~ |
| 8/27/2014 | Draft letter of availability | 0.7 |
| ~~9/11/2014~~ | ~~Draft change of address for 7th Circuit and district court~~ | ~~0.1~~ |
| 11/24/2014 | Draft e-mail to 7th Circuit Clerk | 0.1 |
| ~~2/3/2016~~ | ~~Draft notice of motion~~ | ~~0.1~~ |

| 2/3/2016 | Organize receipts, review court rules, draft bill of costs (district court) | 1.5 |
|---|---|---|
| 2/3/2016 | Organize receipts, review court rules, draft bill of costs (7th Circuit) | 1 |
| ~~3/8/2016~~ | ~~Draft notice of motion~~ | ~~0.1~~ |
| ~~3/13/2016~~ | ~~Draft e-mail to court deputy~~ | ~~0.1~~ |
| ~~4/8/2016~~ | ~~Draft notice of motion~~ | ~~0.1~~ |
| ~~4/27/2016~~ | ~~Draft notice of motion~~ | ~~0.1~~ |
| ~~5/16/2016~~ | ~~Draft notice of motion~~ | ~~0.1~~ |
| ~~5/19/2016~~ | ~~Draft e-mail to court deputy~~ | ~~0.1~~ |
| 6/16/2016 | Organize receipts, review court rules, draft bill of costs (district court) | 2.2 |

| 8/22/2010 | Review photographs, select, organize for trial exhibits | 0.5 |
|---|---|---|
| 8/25/2010 | Review photographs, select, organize for trial exhibits | 0.8 |
| 11/1/2012 | Organize and file received trial exhibits | 0.8 |
| 6/21/2008 | Review FOIA responses | 0.3 |
| 8/17/2009 | Review DVD | 0.8 |
| ~~12/21/2009~~ | ~~Refile response to motion to reconsider , not under seal~~ | ~~0.1~~ |
| ~~4/8/2010~~ | ~~Review attorney appearances (3)~~ | ~~0.1~~ |
| 8/22/2010 | Review photographs, select, organize for trial exhibits | 0.5 |
| 8/25/2010 | Review POD videos | 1.2 |
| 8/27/2010 | Prepare exhibits, review exhibit books, check redactions | 1.2 |
| 8/27/2010 | Prepare map of POD cameras | 0.4 |
| 10/22/2012 | Review e-mail from court deputy | 0.1 |
| ~~6/13/2014~~ | ~~Review attorney appearance~~ | ~~0.1~~ |

| 1/21/2010 | Telephone conference with court reporter F Ward | 0.1 |
|---|---|---|
| 1/22/2010 | Telephone conference with court reporter F Ward | 0.1 |
| 9/8/2010 | Telephone conference with court reporter | 0.2 |
| 9/30/2010 | Telephone conference with court reporter | 0.2 |
| 11/9/2010 | Telephone conference with court reporter (2), prepare 7th Circuit form | 0.5 |
| 6/23/2009 | Telephone conference with court deputy | 0.2 |
| 9/8/2009 | Telephone conference with court deputy (2) | 0.2 |
| 10/26/2009 | Telephone conference with court deputy | 0.1 |
| 3/9/2010 | Telephone conference with court deputy (2) | 0.2 |
| 5/12/2010 | Telephone conference with court deputy | 0.2 |
| 5/26/2010 | Telephone conference with court deputy | 0.1 |
| 6/1/2010 | Telephone conference with court deputy | 0.2 |
| 6/4/2010 | Telephone conference with court deputy (2) | 0.3 |
| 9/7/2010 | Telephone conference with court deputy (2) | 0.3 |
| 7/14/2010 | Telephone conference with court deputy (4) | 0.6 |
| 8/4/2010 | Telephone conference with court deputy | 0.1 |
| 8/25/2010 | Telephone conference with court deputy | 0.2 |
| 9/30/2010 | Telephone conference with CPD FOIA officer | 0.3 |
| 12/1/2010 | Telephone conference with court deputy (2) | 0.3 |
| 2/4/2011 | Telephone conference with court deputy | 0.1 |
| 11/8/2012 | Telephone conference with court clerk re record supplement | 0.1 |

| 10/10/14 | Proofread brief | 1.1 |
|---|---|---|

| 5/26/09 | Draft Rule 26(a)(1) disclosures | 0.8 |
|---|---|---|

| | | |
|---|---|---|
| 1/25/10 | Draft 1st supplemental Rule 26(a)(1) disclosures | .3 |

| | | |
|---|---|---|
| 5/5/2010 | Initial outline draft, o:re-trial order and attachments using previous forms | 1 |
| 5/7/2010 | Draft letter to client | 0.1 |
| 5/7/2010 | Initial outline draft, pre-trial order and attachments using previous forms | 1.5 |
| 5/8/2010 | Initial outline draft, pre-trial order and attachments using previous forms | 1.1 |
| 8/20/2010 | Organize and prepare trial files and exhibits for transport | 0.8 |
| 9/8/2010 | Organize and prepare trial flies for possible re-trial | 1.9 |
| 9/23/2010 | Telephone conference with defense counsel | 0.1 |
| 10/8/2010 | Organize all trial exhibits for possible re-trial | 1 |

ENTER:

Dated: March 28, 2017

_____
REBECCA R. PALLMEYER
United States District Judge